BATE FIELD *v.* MIDDLESEX BANKING CO. ET AL.

1. INFANTS. *Attainment of majority compromises. Disclosure of facts. Fraud.*

   A compromise made by the beneficiary of a trust, on the day she attained her majority, of a pending litigation with those who, during her infancy, had acquired the trust estate by fraudulent combination with the trustee, is void in the absence of a disclosure to her of all the material facts within their knowledge.

2. CHANCERY PRACTICE. *Amendments. Remanding to rules.*

   Where the defendants to a suit have, during a protracted litigation, insisted upon the validity of a deed, amend their answer pending a trial, and assert its invalidity, the cause should, on complainant's application for leave to amend her bill, be remanded to rules for that purpose.

FROM the chancery court of Bolivar county.

HON. JAMES C. LONGSTREET, Chancellor.

Bate Field, the appellant, was the complainant in the court below; the Middlesex Banking Co. and others, were defendants there.

The facts upon which the decision of the court is based are sufficiently apparent from the opinion.

*Carroll & McKellar, Tim E. Cooper,* and *John P. Bullington,* for appellants.

Unless this complainant contracted away her estate with the benefit of competent and independent advice, at arms' length, possessed of knowledge of all the material facts within the knowledge of the defendants, she was entitled to a decree vesting her with title in fee to the four plantations, for the Middlesex Banking Company, upon the authorities, must be treated as the substitute for J. H. Field, and as her trustee (*Losey* v. *Stanley,* 147 N. Y., 560–579; *Kirsch* v. *Tozier et al.,* 143 N. Y., 390–397; *Rhodes* v. *Bate,* 1 L. R. Cr. App. Cas., 257; *Tate* v. *Williamson,* 3 L. R. Ch. App. Cas., 55; *Walker* v. *Lymonds,* Swanson's Ch., 72), the fee having vested in her upon the death of her uncle and brother. *Gray* v. *Hudson,* 53 Miss., 587.

The complainant's contention is that she is entitled in this forum to a cancellation of the special warranty deed of November, 1896, on the ground that she was without counsel of her own to advise her; that she was profoundly ignorant of all the matters and things connected with the litigation; that she was but a child, with no business experience, having just attained her majority; that all the dealings were had by others, and among those who had those dealings were the defendants, who occupied relations to her which absolutely precluded them, or either of them, from buying the property of her without making to her the fullest disclosure of every material fact which it was necessary for her to know, in order that she might deal with them, or either of them, possessed with the knowledge of every essential and material fact within their knowledge that

would put her in possession of the truth of all the transactions had between them, or either of them, and her trustee, or any one acting by the procurement of her trustee, that she might be in a position to intelligently know what her rights were, and thus knowing, to have some conception of the value of her property interests.

All of the material facts were concealed. Not a document produced which discloses or leads to information about a single transaction that affected her property rights, yet the Middlesex Banking Company had aided the trustee in his exchanging of her property for that in which she had no interest, by releasing its mortgages on hers, and in making five mortgages.

Miss Field was entitled to have been advised that claiming under the deed of the 30th of August, under a statute of Mississippi, and the decisions construing that statute, upon the falling in of the estate of the life tenant, she had, with her brother, an estate subject alone to the trusts imposed thereon by a provision in the deed of her uncle, and that upon the falling in of the estate of her brother, without heirs of his body, that she became the owner in fee of the four plantations, and that under the will of her uncle, if the deed of the 30th of August should be declared invalid for any purpose, she was entitled to the entire estate which had been conveyed by that trust deed, and which had been sold under various fraudulent sales, and that notwithstanding such sales, the trusts, whether she claimed under the deed of the 30th of August or in antagonism to that deed and under the will, were impressed upon the lands by reason of the transactions which took place, and which have been developed in evidence by the testimony of witnesses and the documents produced, so as to unmistakably appear in their true colors.

She was entitled to have been told that she could come into a court of equity, and say when all the transactions of which her uncle in his lifetime complained were made, she was an infant of tender years, and she had no personal knowledge of

the circumstances of the execution thereof, and while an infant, under the direction and control of the defendants, or some of them, she sued out letters of administration with the will annexed of Eldon .C. Field, or, rather, they were procured in her name, and that the suit had been revived in her name as such administratrix; and that having assumed the trusts of that administration, that it was her duty either to proceed in the prosecution of the suit as it had been originally propounded on behalf of her testator, or bring the matter to the attention of the court, to the end that, if necessary to the proper prosecution of the suit, she might be relieved of her office as such administratrix, and another appointed in her place, and restored to her position as the defendant, in order that she might assert and maintain, against adverse parties thereto, the estate vested in her by the deed of the 30th of August.

She was also entitled to have been informed as to each and every of those transactions, the connection of all the parties thereto with each and every one of them, and the exact steps which were taken that brought about the breaches of the trusts of the deed of the 30th of August, 1890. She was also entitled to have been informed that the account between the Middlesex Banking Company and the trustee, under the deed of the 30th of August, was kept in the name of that trustee, and he was dealt with as the principal; that these sales were all brought about, and were not sales *in invitum,* and who were the efficient and co-operating actors in bringing them about; what steps each took, to the end that she might have that information which the beneficence of the law requires should be furnished and possessed by parties standing in the relation that this complainant did, and dealing with those who not only possessed such knowledge, but occupied a fiduciary relation to her in law, and were the efficient instruments to deprive her of her property. She was entitled to have been informed that she could have stood on that record, and have maintained her rights under and by virtue of the validity of the trust deed of the

30th of August, or she could have stood upon the record and claimed under the will of her uncle, and admitted that the trust deed could be avoided by reason of either circumstances of imposition or of mental incapacity. She was entitled to have been told that until that deed was avoided, it operated to pass the title of E. C. Field to the plantations (*Hafler* v. *Strange,* 65 Miss., 323-328), and that he carved out the life estate for himself, and after his death the beneficial estate for herself and her brother, and upon the death of her brother without issue of the body or children, the entire estate vested in herself. Code, § 2436; *Gray* v. *Hudson, supra*; *Jordan* v. *Roach,* 32 Miss., 481.

When the complainant was informed of the true relation of the defendants to the contracts, the enforcement of which apparently deprived her of all property rights as to each and every of those contracts, child as she was, she would have known "it is nothing more than a sham contract; a thing entered into by one agent . . . to sell with another agent . . . to buy;" that "there really was nothing more in it when it had been adopted than when it was entered into; that it was not a transaction which could, in any sense, bind" her. *New Sombrero Co.* v. *Erlanger,* Law Reports, 5 Ch. Div., 113.

The several acts were steps that made fraud possible, and were the acts of the defendants in co-operation to obtain complainant's estate, and all of them were *mala fides.* *McLean* v. *Letchford,* 60 Miss., 183.

*Wheeler* v. *Smith,* 9 How. (U. S.), 55, is not in point by reason of the dissimilarity of the facts.

Here we have every element of trust. The truth is suppressed. The complainant, a mere child, is brought to the scene long after proposals for compromise, of which she had no knowledge, had been exchanged between counsel; taken to a room of a hotel and there told that she would lose everything, because a certain deposition which she never saw and has never seen to this day, had disclosed the facts which established that she had

no rights to propound. This deposition is not produced for her inspection, or for the inspection of her present counsel. That her title has been validly purchased under those circumstances, upon an agreement of compromise tainted with fraud, is obvious. Such compacts require the fullest good faith; may be vitiated as well by concealment as by positive misstatement. *Taie* v. *Williamson,* 2 L. R., Ch. App. Cases, 72; *Dorrah* v. *Hill,* 73 Miss., 787-800.

*Perkins & Winston,* for appellees.

The case at bar is an effort on the part of the appellant to set aside a compromise of a long and hotly contested litigation, after numerous depositions had been taken, made by her with the advice of her mother, her brother, and her counsel in the suit, the complainant being *sui juris,* there being no relation of trust or confidence between her and the appellees, and the negotiations for which were first set on foot on her behalf and by her attorneys.

Although the complainant, in her sworn bill, has said that on the day she became twenty-one years old, "Without knowledge of her rights and without advice of counsel of her own, ' she executed the compromise deed, and that she was ignorant when she executed that deed that her uncle had, on August 30, 1890, conveyed the land to her father in trust, after the death of her uncle, for the benefit of herself and brother, and although she deposed upon direct examination, "No one ever advised me as to my rights at all prior to my signing" the compromise deed, and "I had never seen nor heard of the deed of the 30th of August, 1890" until my counsel read to me the bill of complaint; yet these statements, in view of her admissions upon cross-examination, and the other evidence in the case, cannot be accepted as correct. Upon cross-examination her attention was called to her answer, filed July 9, 1894, containing the following clause: "Defendant says that she does deny that charge made in complainant's bill, that the deed made by com-

plainant on August 30, 1890, to J. H. Field, Sr., trustee, is fraudulent, and believes said deed was made in good faith for the benefit of herself and brother, vesting the property of her uncle, Eldon C. Field, in herself and brother, reserving the rents and profits and benefits to him, the said Eldon C. Field, during his life," and she admitted that the same was in her handwriting; that the answer had been prepared by the then counsel for E. C. Field (afterwards her counsel), and copied by her at the time it was filed.

It is true that she also testified that she did not think she gained any information from what was contained in the answer; that she did not think that she understood a word of it; that she merely copied it because she was asked by her uncle's counsel to do so; but it must be borne in mind that in 1894 she was in her nineteenth year; that she was a young lady highly educated, traveled, and of unusual powers of mind and memory, her disability of minority having been removed upon the petition of her father and mother more than one year before that time. She further admitted on cross-examination that at the termination of the interview which she and her mother had with the senior counsel, who had been conducting the cause for her uncle, at Rosedale, shortly after her uncle's death, that she understood that he, as her attorney, was going to proceed with the suit in her name, upon the same terms as to fees as those which had been made by her uncle; that both of her counsel, together with her mother and brother, were present when she signed the compromise deed, and that her counsel advised her to execute it; that she came to the meeting in Memphis, at which the deed was signed, in response to a telegram from her mother.

Her senior counsel, in speaking of what occurred at the time the compromise deed was signed, testified: "I further explained to Mrs. Field and to Miss Bate and her brother, that Miss Bate had another chance of winning in the suit if we couldn't sustain the suit as originally brought; that in the

event we concluded that she couldn't sustain her bill to cancel
the deed made August 30, 1890, conveying the property to
J. H. Field Sr., J. H. Field, Jr., and to Bate Field, that we
might, on a bill filed by her, sustain the trust of that instru-
ment, and show that J. H. Field, E. C. Field, and the Middle-
sex Banking Co. had conspired to defeat that trust."  . . .
"After some discussion, it was agreed by all parties that it was
best to make the compromise, and accept the $2,000." Speak-
ing of the capacity and understanding of the complainant, he
said: "I consider her a very bright, sensible woman. . . .
She seemed to have a very clear comprehension of all the feat-
ures of the case." As to the fairness of the compromise, he
said: "I consider that compromise fairly and squarely made
with full understanding by all the parties interested in the
case."

"In his letter to the mother of complainant, written July
8, 1896, the same counsel referring to the deed of August
30, 1890, said: "There is another aspect of the case that
occurs to me that will win two-thirds of the property, and that
is to prove the trust a valid trust, and then file a bill in the
name of Harry and Bate for a violation of the trust by J. H.
and E. C. Field, with knowledge and connivance of G.—— &
V.———— Co. . . . Do not breathe this, as I am prepar-
ing the interrogatories to Lockwood and Clarke, and if I can
lead them into the trap will dismiss and file another bill at
once for Bate and Harry for two-thirds of the property as
conveyed by E. C. Field." Both the mother and daughter
testified to the great intimacy existing between them and the
thorough acquaintance of each with everything that the other
knew.

The chancellor found that the compromise was fairly made;
that there was no concealment, no misrepresentation, no igno-
rance on the part of the appellant; that there was no fraud,
either in the compromise or in the transactions by which Julian
Field acquired the title.

It is contended that complainant's counsel, who advised the compromise, were officious in having anything to say about the deed of August 30, 1890. That is unjust. They were employed to recover the property for her; she could claim through two inconsistent sources; through one she would recover, if successful, the whole property absolutely; through the other, as matters then stood, only a defeasible interest. It was the duty of counsel to weigh well what the rights of complainant were from both sources, and to advise her as to both.

Complainants contend that the compromise should be set aside because Lockwood testified that the loans were made in good faith, under the belief that Julian Field's title was good, when he was in possession of documents which showed the contrary. We answer, he made the documents exhibits to his deposition, and delivered them to complainant's counsel. The testimony was as to his actual good faith and intention, and not as to any conclusion that would result as a matter of law from the facts. Even J. H. Field, Sr., whose deposition was taken by complainant, and who made his testimony as favorable to his daughter as possible, testified to Lockwood's good faith.

If the appellees were trustees at all (which is denied) they were trustees *in invitum,* or rather liable to be declared or converted by a decree of the chancery court into trustees *in invitum,* and there was no relation of trust or confidence existing between the appellant and them at the time of the compromise, nor had there ever been at any time any such relation. Trusts and trustees *in invitum* are not true trusts and trustees. 2 Pom. Eq., sec. 1044. *Cooper* v. *Cooper,* 61 Miss., 676. There is no element of trust or confidence in trusts *in invitum.* The relation is one of hostility. Mr. Pomeroy says such trusts are "trusts only *sub modo."* "They are interposed by equity, contrary to the trustee's intention and will, upon property in his hand. They have little resemblance in their essential nature to express trusts." He says: "Care should be taken to distinguish between actual trusts and those relations which are

only trusts by way of metaphor." 2 Pom. Eq., sec. 1044. In
*Colton* v. *Stanford,* 16 Am. St. Rep., p. 137, a case where a
real fiduciary relation existed, the court said: "Where the
trustee deals directly with the *cestui que trust,* the latter having
for himself an independent adviser, and the trustee making
no pretense of advising, the transaction is not voidable at the
election of the beneficiary, but it will devolve upon the latter,
if he would set it aside, to show some reason therefor. He
must show either actual or constructive fraud." The lim-
itation upon the right of a trustee to deal with a *cestui
que trust,* and his duty to disclose and advise, grow out
of the trust and confidence reposed in the trustee. This
principle applies only to true or real trustees, or to persons
holding other confidential relations, such as agents, attorneys,
etc., and is founded upon the confidence involved in the rela-
tion as a fundamental part thereof.

Compromises are highly favored by the courts, and will be
upheld if possible. *Bass* v. *Nelms,* 56 Miss., 502; *Whitesides*
v. *Taylor,* 105 Ill., 499; 1 Perry on Trusts, sec. 185; Bisphan's
Eq., sec. 243; 2 Pom. Eq., sec. 850; *Mills* v. *Lee,* 17 Am. Dec.,
118. Compromises will not be disturbed for any ordinary mis-
take of law or fact. 1 Perry on Tr., sec. 185; 2 Pom. Eq., sec.
850, 855. While in some cases mistake of antecedent, legal, ex-
isting, private rights will be treated as mistake of fact and not of
law, this rule has no application to cases of compromise. 2
Pom. Eq., sec. 849; *Billingsley* v. *Niblett,* 56 Miss., 537.
Cancellation for mistake of fact will never be granted where
the means of information was open to both parties, nor where,
by reasonable diligence, the real facts could have been ascer-
tained. 2 Pom. Eq., sec. 855, note 1, and sec. 856, and cases
heretofore cited.

By reviving and continuing the suit in her name as devisee,
and by claiming in the same right in the bill wherein she
attacked the compromise, complainant elected not to accept the
deed of August 30, 1890, and that election was binding on

her. *Robb* v. *Vos,* 155 U. S., 13; *Kearney* v. *Ry. Co.,* 97 Ia., 719; *Williams* v. *Williams,* 15 Lea, 445; *Conahan* v. *Thompson,* 111 Mass., 270.

Argued orally by *Tim E. Cooper* and *W. H. Carroll,* for the appellant, and by *Calvin Perkins* and *George Winston,* for the appellees.

WOODS, C. J., delivered the opinion of the court.

It would involve so great time and labor to abstract and collate the material facts bearing upon the issues involved in this litigation, as found in the vast record (three large volumes) before us, that we do not feel required to enter upon that work. Besides, we do not think such abstract and collation at all necessary to a thorough comprehension of the conclusions at which we have arrived, and our reasons therefor.

That there was an illegal combination and conspiracy entered into between an unfaithful trustee and the appellees to divest the title to the four plantations in controversy and to invest the same, by reasons of the various fraudulent proceedings and conveyances disclosed, in appellees, we entertain no doubt. Every one of the sales made whereby the titles to the four plantations became apparently vested in Julian Field, was the product of actual fraud—fraud in fact. Every one of them was procured to be made by the trustee, in pursuance of the confederation between the·trustee and these appellees, and for the accomplishment of the original design of enabling the trustee to flagrantly violate his trust. The active aiders and abettors of the trustee occupy, in a court of equity, exactly the position which the trustee occupies.

was to be included in the deed. It is certain the appellants did spoken of as the compromise agreement, cannot stand is equally clear, unless, indeed, a court of equity is impotent to protect Miss Field from the unconscionable advantage taken of her by those with whom she was dealing, and who had despoiled her of a valuable estate, and were, at the time, actually in pos-

session of it. She was a young lady who had reached her majority on the very day she signed the deed of the 21st of November, 1896. She made the compromise, as we shall call it for the sake of brevity, hastily, and without proper advice, or opportunity to maturely consider with proper advice. She was unacquainted with all the material facts in the case, and she never saw the trust deed of August 30, 1890, in which the equitable estate in this property was conveyed to her and her brother, by her uncle, Eldon C. Field. She may have heard of such a conveyance, but, it seems clear to us, was ignorant of its provisions and of her rights under it. She could not have been acquainted with its contents or her rights under it, since she had never seen it, heard it read, nor been advised of her rights under it. In making the compromise, it is more than probable that she did not have in contemplation at all the trust deed of August 30, 1890. Moreover, she was not fully advised of all the material facts in the litigation, which she most likely thought she was only compromising. She had not examined the most important depositions taken by her adversaries, nor had all of them been seen by her counsel, who advised her agreement to the compromise. Four of them were not even filed at the date of the compromise, and though these were seen by one of her counsel who attended their taking, it is not shown that this counsellor examined the exhibits, especially to Lockwood's deposition. If he did so examine, there is no syllable in this volumnious record, which we have been able to discover, even tending to show that he communicated to the appellant any facts showing the bad faith of the appellees, despite Lockwood's deposition affirming the *bona fides* of appellees in this whole transaction.

But it was the duty of these appellees—the confederates of her trustee in the scheme and combination to indirectly do that which they dared not undertake to do directly, in their purpose to acquire title to Eldon Field's estate and destroy the title of the beneficiaries in the trust deed of August 30, 1890—

it was their bounden duty, occupying that relation to Miss Field, to have fully and honestly disclosed to her every material fact of which they had knowledge.

The case is this: Here was a young, inexperienced, and necessitous girl, hastily pressed to a compromise of her rights, without full information of all material facts, and without being offered time for reflection and examination, and with her mother and brother declining then to advise her, agreeing to accept a sum grossly disproportionate to the value of the estate she was advised to quit claim to her adversaries—adversaries who were and long had been in possession of all the material facts, the actual possessors of the entire estate under fraudulent titles, rich and equipped for protracted litigation, whose whole communication to her at that time may be said to have been, practically, "sign, or fight it out." To permit this compromise to stand, under these circumstances, and to allow these confederates of her unfaithful trustee to enjoy, to the full, the fruits of their fraudulent practices, would be a reproach upon the administration of law by a court of conscience.

We have been impressed and embarrassed by repeated and protracted consideration of the inexplicable pleadings in the case. To the original bill filed by Eldon C. Field against herself, her brother, her trustee, and Julian Field, the innocent and unconscious instrument employed by that trustee and his confederates, these appellees, this appellant copied an answer prepared for her by the counsel who prepared the bill for Eldon C. Field, in effect, admitting the fraudulent character of the trust deed of August 30, 1890, under which she alone then claimed. To the amended bill filed by Eldon C. Field, this girl, then nineteen years of age, signed an answer, also prepared by the counsel who drew the bill and amended bill, in which she denied the fraudulent character of the trust deed of August 30, 1890. On the death of her uncle, Eldon C. Field, this young and inexperienced girl took a position antagonistic to her own interests, and if maintained, destructive of

her rights under the trust deed, by becoming administratrix, with the will annexed, of the estate of Eldon C. Field, deceased, and his heir at law, though she was not his heir at law at all. She was led to revive the suit of Eldon C. Field against herself and others, as administratrix and sole legatee and devisee under the will of Eldon C. Field, deceased. She took leave to withdraw her answer and change her position from that of defendant to that of sole complainant—a position hostile to her interests, and if maintained, destructive of her clear rights under the trust deed.

In this strange attitude of the case, on the pleadings, the cause came on for hearing. After the complainant had introduced all the evidence desired to be presented by her, the respondents, appellees here, amended their answer so as to completely reverse their former position as to the validity of the trust deed of August 30, 1890. Their answer as originally made, and as adhered to until the cause was actually being tried, had affirmed the validity of that instrument; the change made was a denial of its validity, and an affirmation of its fraudulent character. The appellant then asked leave to amend her bill so as to affirm the validity of that trust deed, and to strike out the allegation of fraud in its procurement, as charged in the original bill filed by Eldon C. Field, and reaffirmed by her in her bill as administratrix and sole devisee.

Our opinion is that, in this remakable case, the cause should have been remanded to the docket, with leave to complainant and defendants to reform their pleadings as they might be advised, in order that the real issues might be presented, and the merits of the controversy fairly acted upon.

That substantial right is with Miss Field in the case as thus far developed, we have a strong conviction, and to deny her assertion of those rights by reason of any rules of pleading or practice prevailing in courts of equity, or for any other reason, in the view of the case which we have indicated as being entertained by us, should not be permitted until all the powers of

the court of conscience to have the case properly presented
have been exhausted.

*Reversed and remanded.*