67775, 67776, 67777. GEORGIA FARM BUILDINGS, INC. v.
WILLARD et al. (three cases).

BANKE, Judge.

This appeal is the latest in a long series of attempts by appellant Georgia Farm Buildings, Inc., to overturn a default judgment entered against it in a suit to recover for damage allegedly caused by the runoff of mud, silt, trash and debris from land on which the appellant and several other defendants were engaged in construction activities.

The suit was filed by the appellees on August 19, 1980. On August 26, 1980, service was effected on Jim Beck, described in the return of service as being the appellant's general manager. By affidavit, the appellant's president, Bobby Dumas, admitted having learned of the service of the complaint and summons on that date and averred that he immediately caused the documents to be forwarded to the company's insurance agency pursuant to a phone conversation with the agency's general manager. The president of the insurance agency admitted that although the agency received the documents on Sep-

tember 9, 1980, they were not forwarded to the appellant's liability insurer until April 13, 1981. The case against the appellant consequently went into default; and on December 1, 1980, without notice to the appellant, the issue of damages was tried before a jury. Based on the jury's verdict, a judgment in the amount of $131,000 was entered against the appellant on this same date. As to the remaining co-defendants, the case remains pending in the trial court.

The appellant learned of the existence of the default judgment on April 13, 1981. On May 11, 1981, it filed a motion to vacate and set aside the judgment on the ground that the person receiving service on its behalf, Jim Beck, was a mere employee of the company rather than its general manager and as such was without authority to accept service. This motion was denied on July 24, 1981. On December 1, 1981, the appellant moved to open the default pursuant to OCGA § 9-11-55 (b), contending that its failure to file a timely answer was due to excusable neglect. That motion was denied on January 18, 1982. At some point during this period, the appellant also sought relief from the judgment by complaint in equity. However, the trial court dismissed this action on grounds of *res judicata*; and the dismissal was upheld by this court in *Ga. Farm Bldgs. v. Willard*, 165 Ga. App. 325 (299 SE2d 181) (1983). The controversy again appeared before this court in *Ga. Farm Bldgs., Inc. v. Willard*, 169 Ga. App. 394 (313 SE2d 112) (1984), wherein we disallowed an attempt by the appellees to collect the judgment by garnishment on the ground that the judgment was not final at the time the garnishment proceeding was initiated.

On June 20, 1983, in response to a motion by the appellees, the court entered an order declaring the default judgment to be final pursuant to OCGA § 9-11-54 (b). The appellant subsequently applied to this court for leave to take an interlocutory appeal from that order; and on July 13, 1983, this court dismissed the application, ruling that such permission was not necessary because the judgment, having been declared final, was thereby rendered directly appealable as a matter of right. In the meantime, on June 24, 1983, the appellant had filed a timely notice of appeal from the order. Not to leave any stone unturned, the appellant also filed another notice of appeal on July 18, 1983, from both the order of June 20th and the default judgment itself.

Subsequent to the entry of the order of June 20th, the appellees moved for and were granted an order requiring the appellant to post a supersedeas bond pending appeal. The appellant did not comply with that order; and on July 13, 1983, the appellees filed notices to take the depositions of three of the appellant's officers for use in aid of execution. Simultaneously, the appellees filed a notice to produce, directing these same officers to make available at the time of taking of their depositions certain corporate records in their custody, control,

or possession. The officers did not comply with this notice; and on August 24, 1983, the trial court granted a motion by the appellees for an order requiring the appellant to produce the designated documents. On August 31, 1983, the appellant filed a third notice of appeal from this order. *Held*:

1. The second notice of appeal, filed on July 18, 1983, is redundant insofar as it seeks to appeal the order of June 20, 1983, declaring the default judgment of December 1, 1980, to be final, and is untimely insofar as it seeks to appeal the default judgment itself. Appeal No. 67777 is accordingly dismissed.

2. We reject the appellees' contention that the dismissal of the complaint in equity constitutes a prior adjudication of any issue relating either to the sufficiency of service of process or to the court's denial of the motion to open the default. That dismissal was itself based on the doctrine of *res judicata* and did not purport to decide whether service was proper or whether there was a legal excuse for the appellant's failure to file a timely answer. Accordingly, the present appeal presents the first opportunity the appellant has had to obtain appellate consideration of these issues.

3. The trial court did not err in denying the appellant's motion to set the judgment aside on grounds of insufficiency of service of process. The return of service was regular on its face, and the burden was consequently on the appellant to establish facts controverting it. See generally *Williams v. Mells*, 138 Ga. App. 60 (225 SE2d 501) (1976). Although the appellant contends vigorously that Jim Beck, the recipient of service, was a "mere employee" without authority to accept service for the corporation, there was ample evidence to the contrary. Mr. Allen Freedman, the secretary of the corporation and the holder of 50 percent of its outstanding shares, testified on deposition that Beck was responsible for supervising employees and subcontractors on the construction site, as well as for taking care of complaints, determining the kind and amount of materials to be used on the job, and inspecting "loads" as they were delivered. Also, it is undisputed that Beck held himself out as the company's general manager and that he did so with the company's approval. The trial court was authorized to conclude from this evidence that Beck was legally authorized to accept service on the company's behalf. Accord *Northwestern Nat. Ins. Co. v. Kennesaw Transp.*, 168 Ga. App. 701 (309 SE2d 917) (1983). See also *Scott v. Atlanta Dairies Cooperative*, 239 Ga. 721 (2), 724 (238 SE2d 340) (1977); *Adams v. Upjohn Co.*, 142 Ga. App. 264 (235 SE2d 584) (1977).

4. The trial court did not abuse its discretion in denying the appellant's motion to open the default based on excusable neglect in failing to file a timely answer. The motion was filed pursuant to OCGA § 9-11-55 (b), which provides, in pertinent part, as follows: "At

any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court." The term "excusable neglect," as used in this code section, refers to a "reasonable excuse" for failing to answer, as distinguished from wilful disregard of the process of the court. *Early Co. v. Bristol Steel &c., Inc.*, 131 Ga. App. 775, 777 (206 SE2d 612) (1974).

The facts of this case do not establish as a matter of law the existence of a reasonable excuse for failing to file a timely answer. In an affidavit executed in support of the motion to open the default, the appellant's president asserted that on the day the complaint was served, he was advised by the manager of the appellant's insurance agency that if he would mail the complaint and summons to the agency, the agency would "take care of it." The president of the agency submitted an affidavit in which he admitted that the agency had received the complaint and summons on September 9, 1980, but had not forwarded the documents to the appellant's liability insurer until August 13, 1981. The appellant cites this court's decisions in *American Erectors, Inc. v. Hanie*, 157 Ga. App. 687 (278 SE2d 196) (1981); *Cobb County Fair Assn. v. Boyle*, 143 Ga. App. 754 (240 SE2d 136) (1977); and *Lanier v. Foster*, 133 Ga. App. 149 (210 SE2d 326) (1974), for the proposition that such reliance upon an insurance company or independent insurance agent constitutes a reasonable excuse as a matter of law for failure to cause a timely answer to be filed. However, in each of those cases, the defaulting defendant acted promptly to open the default upon learning that no answer had been filed. The appellant in the present case did not move to open the default until over nine months after learning of its existence. In accordance with Judge Carley's special concurrence in *American Erectors, Inc. v. Hanie*, supra, we hold that the trial judge was entitled to consider this additional delay in determining whether the appellant's neglect was excusable. Thus, we cannot conclude that the judge abused his discretion in denying the motion to open the default.

5. The appellant contends that the trial court should not have entered judgment against it until after the claims against the remaining defendants had been adjudicated. This court has adopted the following guidelines governing the rendition of judgment against defaulting defendants in multi-defendant actions: " 'If . . . the alleged liability is joint, a default judgment should not be entered against a defaulting defendant until all of the defendants have defaulted; or if one or more do not default then, as a general proposition, entry of judgment should await an adjudication as to the liability of the non-

defaulting defendant(s). If joint liability is decided against the defending party and in favor of the plaintiff, plaintiff is then entitled to a judgment against all of the defendants — both the defaulting and non-defaulting defendants. If joint liability is decided against the plaintiff on the merits or that he has no present right of recovery, as distinguished from an adjudication for the non-defaulting defendant on a defense personal to him, the complaint should be dismissed as to all of the defendants — both the defaulting and the non-defaulting defendants.' 6 Moore's Fed. Practice ¶ 55.06, at 55-81 (2d ed. 1976); 10 Wright & Miller, Fed. Practice and Procedure: Civil, § 2690 (1973); *Wall v. Benningfield*, 237 Ga. 173 (227 SE2d 13) (1976)." *Stasco Mechanical Contractors v. Williamson*, 157 Ga. App. 545, 546 (278 SE2d 127) (1981).

A determination of whether the alleged liability in a particular case is or is not joint must depend upon an analysis of the alleged facts giving rise to the cause of action. Cf. *Fender v. Gardner*, 153 Ga. 460 (4) (112 SE 368) (1922). Generally speaking, "[i]f the separate and independent acts of negligence of two or more persons or corporations combine naturally and directly to produce a single indivisible injury other than a nuisance, and if a rational basis does not exist for an apportionment of the resulting damages among the various causes, then the actors are joint tortfeasors, jointly and severally liable for the full amount of plaintiff's damages, notwithstanding the absence of voluntary intentional concert of action among them." *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421) (1974), aff'd *Mitchell v. Gilson*, 233 Ga. 453 (211 SE2d 744) (1975). A classic example of a "single injury" tort caused by the combined negligence of multiple defendants may be found in *Zimmerman's, Inc. v. McDonough Constr. Co.*, 240 Ga. 317 (240 SE2d 864) (1977), wherein the plaintiff sued a construction contractor and several other defendants asserting that their combined negligence had led to the collapse of a ceiling over its store.

As in other cases, an injury to property resulting from water and siltage runoff generated by development activities on neighboring land may be either indivisible or apportionable, depending on the specific type of injury involved. In *Weems v. Freeman*, 234 Ga. 575 (216 SE2d 774) (1975), involving damage resulting from flooding which occurred when the runoff from the defendants' development activities caused a creek on the plaintiff's property to overflow its banks, the Supreme Court assumed, but did not expressly decide, that the tortfeasors were jointly liable. The plaintiffs in the present case do not seek to recover for damage caused by flooding but complain rather that the runoff of mud, silt, trash, and debris generated by the defendants' "land disturbing activities" polluted several lakes on their property, thereby causing the destruction of fish and other

life forms therein. Pollution damage of this type is normally considered to be apportionable among the various tortfeasors contributing to it. See generally Restatement of Torts, Second, § 840E, Comment b, p. 177. The Restatement offers as an example of an exception to this general rule a hypothetical situation wherein oil discharged upon the surface of a stream by several defendants catches fire, and the fire spreads to and destroys a nearby barn. Id. at p. 178, Comment c. Since the injury alleged in the present case did not result from fire or flooding but from the immediate effects of the pollutants themselves, it would appear that the general rule applies and that each defendant may be held accountable for his individual contribution. We accordingly hold that the trial court was not required to await an adjudication of the liability of the non-defaulting defendants prior to entering judgment against the appellant. This conclusion is reinforced by the proposed answer which the appellant filed in conjunction with its motion to open the default, wherein it sought to defend not upon any ground which would defeat the entire claim but solely on the ground that its particular construction activities had not resulted in any runoff.

6. The trial court did not err in enforcing the appellees' notice to produce. The appellant contends that pursuant to OCGA § 9-11-69, a judgment creditor is allowed to obtain discovery for use in aid of execution only "in the manner provided in this chapter for taking depositions or propounding interrogatories." However, OCGA § 9-11-30 (b) (5) specifically provides that a notice of deposition "may be accompanied by a request made in compliance with Code Section 9-11-34 for the production of documents and tangible things at the taking of the deposition." Since the appellees' request for production of documents was filed in conjunction with the notices to take the depositions of the appellant's officers, it was authorized by OCGA § 9-11-69.

7. The appellant's remaining enumerations of error have been carefully considered and have been determined to be without merit.

*Judgments affirmed in Case Nos. 67775 and 67776. Appeal dismissed in Case No. 67777. Shulman, P. J., and Pope, J., concur.*

DECIDED MARCH 1, 1984 —
REHEARING DENIED MARCH 16, 1984 —

*Herbert S. Waldman*, for appellant.
*John L. Green*, for appellees.