PER CURIAM:
 

 I.
 
 Background
 

 On April 13, 1988, James Henderson, as bankruptcy trustee for Service Equipment Company, and John Smithgall filed suit against the accounting firm of Cherry, Bekaert & Holland (CBH), a North Carolina partnership, for its role in the purchase and sale of the stock of Service Equipment Company. The complaint included federal securities law and pendent state law claims.
 

 CBH filed a Fed.R.Civ.P. 12(b) motion to dismiss the complaint. The motion sought dismissal on the ground that the district court lacked subject matter jurisdiction over the claims asserted against it by Smithgall. The motion also sought dismis
 
 *1407
 
 sal of the complaint on the ground of insufficient service of process.
 
 See
 
 Fed.R.Civ.P. 12(b)(5).
 
 [1]
 
 In support of its motion to dismiss, CBH submitted the affidavits of Tomi Simpkins, a receptionist who spoke with the process server, and Jerry Killinger, the CBH employee with whom the summons and complaint were left. Henderson submitted the affidavit of Robert Heath, the process server, in opposition to the motion.
 

 According to the affidavits, on August 11, 1988, Heath went to the Atlanta office of CBH to attempt to serve the complaint. After speaking with Simpkins, Heath left the process with Killinger, a certified public accountant employed there by CBH. Killinger was not a partner at CBH, but his business card, which he gave to Heath, indicated that he was a C.P.A. and carried the title of “Manager.” CBH received timely actual notice of the suit. These facts are undisputed. The parties disagree about whether Simpkins told Heath that no one of authority was present, about whether Heath refused to come back another time, and about whether Killinger accepted the process under protest of lack of authority.
 

 The district court found it lacked subject matter jurisdiction over all Smithgall’s claims, and dismissed Smithgall as a party to the action. (Smithgall is no longer a party to this appeal.) The district court also agreed with CBH’s second argument and, without holding an evidentiary hearing, found that service upon CBH by service upon Killinger was insufficient. Noting that no other effort had been made to timely serve CBH, the court dismissed the action. Henderson appeals the district court’s dismissal.
 
 [2]
 

 II.
 
 Discussion
 

 CBH prevailed in the district court on the claim that service on it was improper because Killinger was not a proper person to receive service for CBH. According to the Federal Rules of Civil Procedure, process could be served on CBH, a partnership, either “pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that state,” Fed.R.Civ.P. 4(c)(2)(C)(i), or “by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process,” Fed.R.Civ.P. 4(d)(3).
 

 Although the district court cited the applicable rules of civil procedure in its order, it did not undertake an analysis of whether Killinger was a proper person to receive service for CBH. Instead, it appears that the court found that service was improper because Henderson did not serve a partner in CBH. In its order, the court said “[t]he record indicates that at the time plaintiffs commenced the instant action, plaintiffs were aware of the proper method to effect service on defendant partnership. Plaintiffs specifically stated that [Cherry, Bek-aert & Holland] may be served by serving any one of its partners.... ” The court also found “that plaintiffs were aware on April 13, 1988, when the complaint was filed that defendant
 
 should
 
 be served by serving any one of its partners” (emphasis added). If the court understood that process could properly be served on persons other than partners in CBH, its analysis does not reflect that understanding. Finally, discussing the plaintiffs’ dilatoriness, the court said “to date, there is no indication in the record that plaintiffs have made any effort to properly effect service on a partner of defendant’s firm.” Noting that more than a year had passed since the plaintiffs had filed their complaint, the court dismissed the action.
 
 See
 
 Fed.R. Civ.P. 4(j).
 
 [3]
 

 
 *1408
 
 On appeal, Henderson argues that the district court erred in finding that Killinger was not a proper person to receive service on behalf of CBH. Henderson also argues that should we decide that the district court was correct in that determination, the district court erred by dismissing the complaint without providing plaintiffs an opportunity for reservice. We conclude that even though Killinger was not a partner, he was under Georgia law a proper person to receive service for CBH.
 
 [4]
 

 Under Georgia law, process can be served on a nonresident partnership “doing business and having a managing or other agent, cashier, or secretary within this state, [by delivering the process] to such agent, cashier, or secretary or to an agent designated for service of process.” O.C. G.A. § 9-ll-4(d)(2) (1990). In discussing who is an “agent” who can properly receive service, the Supreme Court of Georgia has said that “[s]ince the object of service of process is to transmit notice of suit to the corporation, it must be made on an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him.”
 
 Scott v. Atlanta Dairies Coop.,
 
 239 Ga. 721, 724, 238 S.E.2d 340, 343 (1977). According to Killinger’s affidavit, “[t]he structure of Cherry, Bekaert & Holland for its professional staff is as follows: equity partner, income partner, principal, manager, supervisor, staff, administrative.” Since both parties and the district court agree that service upon a partner in the firm would be clearly proper, our dispute concerns which non-partner employees can properly receive service.
 

 Killinger is a certified public accountant, a position distinguished by advanced education and state licensing, and his firm designates his level of authority with the title “manager.” Assuming that clerical and other support employees rank below the hierarchy of professional employees set out in Killinger’s affidavit, he has reached the second-highest level it is possible to reach in Cherry, Bekaert & Holland without becoming a partner. If we were to hold that service upon Killinger was improper, it would very nearly be the same as holding that proper service could be had only upon a partner.
 

 In support of their argument that Kil-linger was not authorized to receive service for the partnership, CBH offers Killinger’s affidavit, in which he states that he has “never been authorized as an agent by appointment or by law to accept service of process on behalf of [CBH],” and notes that he lacks “authority to sign tax returns, opinion letters or audit reports.... [or] to contract for or otherwise bind [CBH].” CBH provides no explanation of Killinger’s authority and responsibility within the firm.
 

 Under Georgia law, to be a proper agent to receive service, “[i]t is not necessary that the employee in question be an officer or that he be authorized to enter into contracts on behalf of the corporation.”
 
 Ogles v. Globe Oil Co., U.S.A.,
 
 171 Ga.App. 785, 786, 320 S.E.2d 848, 849 (1984). It is therefore immaterial that Killinger cannot legally bind CBH, whether it is by his signature on a contract or on a tax return.
 

 We think it almost certain that a Georgia court would find that Killinger’s “position is such as to afford reasonable assurance that he will inform his ... principal that such process has been served upon him.”
 
 Scott,
 
 239 Ga. at 724, 238 S.E.2d at 343. The Georgia cases do not create a high threshold for the amount of authority necessary to make an employee a valid agent to receive process.
 
 Compare Citi
 
 
 *1409
 
 zens Bank of Hapeville v. Alexander-Smith Academy, 226 Ga. 871, 178 S.E.2d 178 (1970) (service not proper on "receptionist-typist") and Whatley's Interiors, Inc. v. Anderson, 176 Ga.App. 406, 336 S.E.2d 326 (1985) (service not proper on "personal secretary/typist") and Adair Realty Co. v. Greenbriar-Fulton, Inc., 149 Ga.App. 669, 255 S.E.2d 128 (1979) (service not proper on "secretary-receptionist") and Thoni Oil Co. v. Tinsley, 140 Ga.App. 887, 232 S.E.2d 162 (1977) (service not proper on employee designated as "Mgr." on return of service, but shown by uncontroverted affidavits to be mere service station attendant) with Scott v. Atlanta Dairies Coop., 239 Ga. 721, 238 S.E.2d 340 (1977) (service proper on employee "charged with scheduling the pickup of milk from Putnam County producers") and Ogles v. Globe Oil Co., U.S.A., 171 Ga.App. 785, 320 S.E.2d 848 (1984) (service proper on "manager of the appellee's Forsyth County store") and Georgia Farm Bldgs. v. Willard, 170 Ga.App. 327, 317 S.E.2d 229 (1984) (service proper on employee "responsible for supervising employees and contractors on the construction site" who "held himself out as the company's general manager ... with the company's approval") and Northwestern Nat'l Ins. Co. v. Kennesaw Transp., 168 Ga.App. 701, 309 S.E.2d 917 (1983) (service proper on personal secretary who "led the officers to believe that she was in charge of the office and was authorized to accept service").
 

 In addition, we note that Georgia courts also consider the fact of actual notice in answering the question whether an employee is a valid agent for receipt of service, and CBII received timely actual notice of this suit. See Ogles, 171 Ga.App. at 786, 320 S.E.2d at 849 ("Clearly his duties and responsibilities were such as to afford reasonable assurance that he would inform his corporate principal of the service of process upon him; and it is undisputed that he in fact did so in a timely manner. Under these circumstances, we have no hesitancy in holding that he was a qualified agent upon whom to perfect service of process").
 

 We think it perfectly reasonable to assume that a person who gives a process server a business card that presents the person as both a C.P.A. and a "Manager" of his firm, a title which later proves to rank almost at the top of his firm's hierarchy of non-partners, will notify the partnership that he has received service. We find nothing in Georgia law to indicate that Georgia courts would disagree with such a conclusion, and we hold that Henderson made proper service on CBH under O.C. G.A. § 9-11--4(d)(2) as incorporated through Fed.R.Civ.P. 4(c)(2)(C)(i).
 

 III. Conclusion
 

 As a result, we reverse the district court's dismissal of the action and remand the case to the district court for further proceedings.
 

 REVERSED and REMANDED.
 

 [1]
 

 .CBH’s motion also alleged that Count III of the complaint failed to state a claim on which relief could be granted, but this argument became moot when the district court dismissed the complaint for improper service.
 

 [2]
 

 . Although the issue of what statute of limitations applies to each count of the complaint is in dispute, the statute of limitations for the federal law claims apparently would bar the filing of a new suit.
 

 [3]
 

 . Fed.R.Civ.P. 4(j) reads as follows:
 

 
 *1408
 
 Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court’s own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.
 

 [4]
 

 . Because we conclude that service was proper under Georgia law, we have no need to consider Fed.R.Civ.P. 4(d)(3).