# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-02178-SCT

*IRMA COHEN JOHNSON*


*v.*


*GUTTI RAO, M.D.*


DATE OF JUDGMENT:          10/07/2005
TRIAL JUDGE:          HON. C. E. MORGAN, III
COURT FROM WHICH APPEALED:   GRENADA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   WENDY SCHENIQUE WILSON
          WILLIE T. ABSTON
ATTORNEY FOR APPELLEE:   CLINTON M. GUENTHER
NATURE OF THE CASE:   CIVIL - MEDICAL MALPRACTICE
DISPOSITION:   AFFIRMED - 03/22/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

**FACTUAL AND PROCEDURAL HISTORY**

¶1.    On March 3, 2004, Irma Johnson (Johnson) filed a medical malpractice action against

Grenada Lake Medical Center (Grenada Lake) and Dr. Gutti Rao (Dr. Rao), collectively, "the

Defendants."[1] Johnson asserted that Dr. Rao, a doctor at the Grenada Lake Medical Center,

negligently diagnosed and treated the injury she suffered to her left foot after falling at her

---

[1] Johnson's complaint against Grenada Lake was dismissed with prejudice pursuant
to the trial court's April 28, 2005, order. The trial court found that Johnson failed to timely
file suit pursuant to Miss. Code Ann. § 11-46-11 (Rev. 2002) and is now barred by the
statute of limitations. Johnson did not appeal that decision.

home. Grenada Lake filed a motion to dismiss because of the Johnson's failure to comply with Miss. Code Ann. § 11-46-11 (Rev. 2002).[2] Dr. Rao also filed a motion to dismiss because of Johnson's failure to give notice pursuant to Miss. Code Ann. § 15-1-36 (Rev. 2003).[3] The trial court granted the Defendants's motions to dismiss and dismissed the case without prejudice.

¶2. On December 24, 2004, Johnson filed suit again against Dr. Rao.[4] On April 7, 2005, Deputy Sheriff James Payne (Deputy Payne) delivered a copy of the complaint and summons to Dr. Rao's office. Although much controversy exists regarding the events surrounding Deputy Payne's delivery of the summons and complaint, it is undisputed that he served process upon Dr. Rao's receptionist, Melissa Powell.

¶3. Dr. Rao filed a motion to dismiss alleging insufficient service of process and failure to comply with the requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002). The trial court never addressed Dr. Rao's second assignment of error that Johnson failed to comply with Miss. Code Ann. § 11-1-58; however, on appeal, Dr. Rao reasserts his second assignment of

---

[2] Miss. Code Ann. § 11-46-11 provides for a one-year statute of limitations for claims against governmental entities.

[3] Miss Code Ann. § 15-1-36 provides "no action based upon the health care provider's professional negligence may be begun unless the defendant has been given at least (60) days prior written notice of the intention to begin the action."

[4] Johnson also brought suit again against Grenada Lake. However, Grenada Lake filed a Motion to Dismiss the second complaint based upon the same grounds contained in its motion to dismiss the first complaint. Again, the trial court ruled in favor of Grenada Lake. However, unlike the first case, the trial court dismissed Johnson's case with prejudice.

error. The trial court ordered a hearing to consider whether Powell was Dr. Rao's agent, and thus authorized to accept service of process on his behalf. Powell was the only person who testified at the hearing, but Deputy Payne's affidavit was made a part of the record.

¶4. Powell testified that she did not understand what was taking place when Deputy Payne effectuated service of process upon her on behalf of Dr. Rao. Powell testified that she had never personally accepted service of process, nor had she accepted service of process on behalf of someone else. She also testified that her job duties consisted of "answering the phones, checking patients in, filing, and what ever else [that] needed to be done." Additionally, she testified that she "accept[s] stuff all the time."

¶5. According to Powell, on the day in question, Deputy Payne entered the doctor's office wearing his uniform. She testified further that Deputy Payne said he had some papers for Dr. Rao, but he did not inform her that the papers were related to a legal matter, nor did he ask to see the doctor, or identify himself. Powell asserts that Deputy Payne told her to sign the papers, so that he would have a record of who received them. She signed, but she testified that she did not read anything on the papers.

¶6. Deputy Payne stated in his affidavit that he identified himself to Powell upon entering the office. After identifying himself, he then requested to see Dr. Rao to serve him with the legal papers. Deputy Payne also asserts that Powell responded by saying that Dr. Rao was with a patient and unavailable, but she could sign for the papers and give them to Dr. Rao later. It is undisputed that Dr. Rao received the summons and complaint from Powell.

3

¶7. After hearing Powell's testimony and reading Deputy Payne's affidavit, the trial court concluded that Dr. Rao did not appoint Powell as an authorized agent to accept service of process on his behalf. Therefore, the trial court concluded that service of process was insufficient. Because the statute of limitations had subsequently expired, the trial court dismissed the case with prejudice.

¶8. Johnson now appeals to this Court, raising the issue of whether Deputy Payne's delivery of the summons and complaint to Powell on behalf of Dr. Rao was sufficient service of process pursuant to M.R.C.P. 4. Dr. Rao contends that if this Court finds the service of process sufficient pursuant to M.R.C.P. 4, then the trial court's judgment to dismiss should be affirmed due to Johnson's failure to comply with Miss. Code Ann. § 11-1-58.[5]

## ANALYSIS

### I. Service of Process

¶9. This Court reviews de novo a trial court's grant or denial of a motion to dismiss. *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 988 (Miss. 2004). However, "[w]hen reviewing fact-based findings, we will only examine whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Triple "C" Transp., Inc. v. Dickens*, 870 So. 2d 1195, 1197-98 (Miss. 2004) (quoting *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (Miss. 2002) ("A trial court's finding of fact on

---

[5] As the trial court concluded that Dr. Rao was not properly served pursuant to M.R.C.P. 4 and dismissed the complaint *with prejudice*, the trial court never ruled on Dr. Rao's other issue in his motion to dismiss regarding whether Johnson complied with Miss. Code Ann. § 11-1-58.

the existence of good cause for the delay in service of process has been deemed 'a discretionary ruling . . . and entitled to deferential review' on appeal.")).

¶10.    Johnson raises as her sole issue on appeal, whether the trial court erred in finding that Dr. Rao was not properly served process pursuant to M.R.C.P. 4.  Specifically, Johnson asserts that Dr. Rao was properly served by Deputy Payne's leaving the summons and complaint with Dr. Rao's receptionist, Powell.  Johnson contends that Powell was acting as Dr. Rao's agent to accept service of process on his behalf.  This assertion, as the trial court concluded and ruled, is neither supported by the facts nor the law.

¶11.    This Court has defined the word agent, "[to] include only agents vested with some general authority and discretion, and not to extend to mere employees having no independent powers." *Saxony Mills v. Wagner & Co.*, 94 Miss. 233, 239, 47 So. 899, 901 (1908) (citations omitted). Only employees with some authority are classified as agents authorized to accept service of process on behalf of an employer. *Id.*

¶12.    In *McPherson v. McLendon*, 221 So. 2d 75, 77-78 (Miss. 1969), this Court reversed the circuit court's grant of directed verdict where the acts on the part of the insurance company were sufficient for the jury to find that the insurance company had clothed Christine McLendon with the apparent authority to contract on their behalf and the plaintiffs had detrimentally relied on the insurance company's actions.  However, relevant to our review, the Court examined the general laws of agency and stated:

> A general statement of the rule governing apparent authority is found
> in *Steen v. Andrews*, 223 Miss. 694, 78 So. 2d 881 (1955), recently cited with

5

approval in ***Union Compress & Warehouse Co. v. Mabus***, 217 So. 2d 23 (Miss. 1968)[:]

> The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S. Agency, §§ 95, 96. This rule is based upon the doctrine of estoppel. A principal, having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearances thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent's powers. 2 C.J.S., Agency, § 96(c). There are three essential elements to apparent authority: (1) Acts or conduct of the principal; (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. 2 C.J.S., Agency, § 96(e). (223 Miss. at 697, 698; 78 So.2d at 883).

***McPherson***, 221 So. 2d at 78.

¶13.    In ***Williams v. Kilgore***, 618 So. 2d 51, 56 (Miss. 1992), this Court addressed whether service of process on the office manager, Roy Cliburn, was service of process on Dr. Thomas Kilgore's agent, Cliburn; and whether that service of process on Cliburn was sufficient to constitute service of process on Dr. Kilgore in accordance with M.R.C.P. 4(d)(1)(A). M.R.C.P. 4(d)(1)(A) provides:

> The summons and complaint shall be served together. Service by sheriff or process server shall be made as follows:

6

(1) Upon an individual other than an unmarried infant or a mentally incompetent person,

(A) by delivering a copy of the summons and of the complaint to him personally or to an *agent authorized by appointment or by law to receive service of process*;

(Emphasis added).

¶14. Therefore, we must examine each case to determine whether the person was authorized as an agent for purposes of accepting service of process. In *Williams*, 618 So. 2d at 56, the Court specifically examined the facts to determine if the office manager was authorized as an agent to accept service of process in order to decide whether proper service of process occurred, stating:

> The summons and complaint were left with Dr. Kilgore's office manager, Roy Cliburn. Both Cliburn and Dr. Kilgore stated in their affidavits that Cliburn was not authorized by Dr. Kilgore as his agent to accept service of process. Yet Deputy Sheriff Usry testified that *on many occasions Cliburn had accepted service on behalf of Dr. Kilgore and the other doctors in his office* and that he had never been instructed to the contrary on this or any other occasion. We find nothing in our case law which precludes the acceptance of service of process by an agent such as an office manager, who, by custom and practice, is vested with apparent authority to do so. *Relying to his detriment on his past experiences in serving process on physicians in Dr. Kilgore's office as well as upon Cliburn's acceptance of the documents*, the Deputy Sheriff appears to have properly served process in accordance with Rule 4(d)(1)(A).

(Emphasis added). The Court relied on the fact that the office manager, Cliburn, had in fact accepted service of process on behalf of Dr. Kilgore and other doctors in the office on many occasions in the past from this same deputy. Therefore, the Court concluded that Cliburn was authorized as an agent to accept service of process.

7

¶15.   Here, the facts are distinguishable from the facts in **Williams**.   While lengthy, Powell's testimony is helpful in shedding light on this issue and understanding the basis of the trial court's judgment to dismiss the complaint.   Powell testified at the hearing on the motion to dismiss, held on October 4, 2005, as follows:

Q:   [D]id your duties include accepting what is called service of process on Dr. Rao's behalf if he were to be sued in a lawsuit?
A:   No.
Q:   Okay.   Has Dr. Rao ever appointed you his agent for service of process?
A:   No.
Q:   Has Dr. Rao ever said anything to you to the effect of - and let me give you a [sic] for example - Melissa, if anybody ever brings a lawsuit in here to serve on me, I want you to accept it on my behalf.   Has he ever said anything like that?
A:   No.
Q:   Have you ever been served with a summons –
A:   No.
Q:   – or process?   Have you ever personally been sued?
A:   No.
Q:   Have you ever accepted – and again, this is a legal term.   It's called service of process.   Let me back up.   You and I first met in – first talked sometime in late April or May of this year; is that correct?
A:   Right.
Q:   When you and I talked, had you ever heard the term service of process before?
A:   No.
Q:   Okay.   Have you ever accepted service of process on behalf of somebody besides yourself?
A:   No.
Q:   Is it the custom or practice or routine of Dr. Rao's office for someone besides Dr. Rao to accept a summons or process for Dr. Rao?
A:   No.
Q:   In your course of employment at Dr. Rao's office, have you ever accepted process for or on behalf of Dr. Rao?
A:   No.
Q:   On April 7 of  2005, did you accept process?   Did you accept a summons and complaint for or on behalf of Dr. Rao?

8

A: No.

Q: On April 7 of 2005, did a[n] uniformed man come to the office with some papers at Dr. Rao's office?

A: Yes.

Q: Okay. Tell the Court, please, Miss Powell, exactly to the extent you remember, everything that happened - what was said to you, and what you said in reply, and how long this all took when this uniformed man came to Dr. Rao's office.

A: Okay. He came in. He asked if this is Dr. Rao's office. I said yes.

Q: Speak slowly now.

A: And he handed me the papers. He asked me to sign for them. And so I signed, asking why. He said so that he would know whose hands he left it in.

Q: Okay. Did you know this man?

A: No.

Q: Now, you had told me before, that is why I asked you. You said he had a[n] uniform on. Did you recognize the uniform?

A: I knew he was a sheriff. . . .

Q: Did he identify himself? Did he say who he was?

A: No.

Q: Did he say who he was or what he was there for, what his purpose of being at Dr. Rao's office was for?

A: No.

Q: These papers that he mentioned, did you know what they were?

A: No. . . .

Q: Did he ask to see Dr. Rao?

A: No.

Q: Did he say that he needed to personally give these papers to Dr. Rao?

A: No.

Q: . . . Was Dr. Rao actually in the office that day?

A: Yes.

Q: Did this uniformed man make any attempt to go and see or speak with Dr. Rao?

A: No.

Q: Miss Powell, if this sheriff's deputy had asked you to let me him personally speak to Dr. Rao, what would you have done?

A: I would have went and got him and he would have came to the front – . . .

Q: Did you tell this man that you were authorized to accept process on behalf of Dr. Rao?

A: No.

9

At the conclusion of the hearing, the trial court issued its bench ruling, stating:

> The point is whether or not she [Powell] was authorized to do it [accept process on behalf of Dr. Rao]. . . . Either by the doctor or as a matter of law. This is – I'm not trying to cut y'all off, but this is pretty clear-cut. This service of process is inadequate. It does not meet the requirements of Rule 4, and therefore the motion to dismiss is sustained.

¶16. On October 12, 2005, the trial court issued its order entering final judgment of dismissal with prejudice. The order provided:

> [T]he Court finds that neither Dr. Rao, nor an agent authorized by appointment or by law to receive service of process on Dr. Rao's behalf, was personally, sufficiently served with process in accordance with the Mississippi Rules of Civil Procedure 4 within 120 days from the filing of the Complaint herein, after which the statute of limitations herein has also expired.

¶17. Further, in ***Cooley v. Brawner***, 881 So. 2d 300, 301-02 (Miss. Ct. App. 2004), the Court of Appeals affirmed the trial court's judgment dismissing the complaint finding that service of process was not effectuated by service of process on a doctor's receptionist. The court found that the evidence neither provided that the receptionist fully understood what was occurring nor established the patterns or practices of the doctor's office in accepting process. ***Id***. The court reasoned as follows:

> [T]he trial judge held a hearing on the motion. The trial judge found that service of the complaint upon Dr. Brawner's receptionist was not effective service, and no good cause had been shown why service was not effectuated within 120 days. The trial judge entered an order dismissing the complaint . . .
>
> No live testimony was offered on the motion. However, the affidavits of both Davis, Dr. Brawner's receptionist, and Weathers, the process server, were made a part of the record on the motion.
>
> Davis' affidavit, presented by the defense, stated that her duties as receptionist "are simply to answer the phone and to check patients in and out."

10

Davis' affidavit stated that an unidentified female came in the office on February 1, 2002, and delivered an envelope, and that at no time did the woman identify herself or the contents of the envelope. Davis stated that the unidentified woman said that the envelope contained "legal papers" for Dr. Brawner.

Weathers' affidavit stated that she delivered a copy of a complaint and summons for Dr. Brawner to Tupelo Eye Clinic. Weathers stated that she spoke with a female behind the desk and told her that she had "legal papers to serve Dr. Brawner with" and that the female behind the desk told Weathers "to give them to her." Weathers states that the woman never indicated that she was not the proper person to receive the legal papers.

Neither woman was questioned during the hearing. No effort was made to identify the patterns and practices of this office. No effort was made to clarify whether Dr. Brawner's receptionist fully understood what was taking place, or the nature of the act. The evidence before this Court is insufficient to make a determination that Davis was a de facto agent for Dr. Brawner. In the absence of sufficient factual information, this Court, like the circuit court, must hold that Davis was not the agent of Dr. Brawner.

*Cooley*, 881 So. 2d at 301-03.

¶18.    Here, Dr. Rao's receptionist, Powell, testified that she was not authorized by Dr. Rao to accept service of process; that she was not aware that the papers were regarding a lawsuit against Dr. Rao; that she had never accepted service of process on behalf of Dr. Rao or anyone else, in the past; that the deputy did not ask to see Dr. Rao and did not inform her that he was there to serve process on Dr. Rao. Nothing in the record reveals that Powell was authorized to accept process or that Powell had ever accepted service of process on prior occasions. Further, nothing in the record contradicts that Powell did not have authority to accept service of process on behalf of Dr. Rao.

11

¶19. Powell was the only witness who testified at the hearing on the motion to dismiss. The only evidence submitted besides Powell's extensive testimony at the hearing was Deputy Payne's affidavit. Deputy Payne's affidavit provided that he left the summons and complaint with Powell and she accepted the papers and signed for them. As the trial court concluded, it is undisputed that Powell was served the papers and she signed for the papers left by Deputy Payne. However, the trial court concluded that service of process was not sufficient as to serve Dr. Rao.

¶20. Therefore, we find that the trial court did not err in granting Dr. Rao's motion to dismiss Johnson's compliant due to insufficient service of process. Likewise, as the statute of limitations had expired, the trial court did not err in dismissing the complaint with prejudice.

## II. Miss. Code Ann. § 11-1-58 (Rev. 2002)

¶21. Dr. Rao, as in *Walker v. Whitfield Nursing Ctr., Inc.*, 931 So. 2d 583, 588 (Miss. 2006), essentially raises the issue of whether strict compliance with the statutory requirements of Miss. Code Ann. § 11-1-58 is required.

¶22. However, as the trial court determined that Dr. Rao was not properly served pursuant to M.R.C.P. 4 and dismissed the complaint *with prejudice*, the trial court never ruled on Dr. Rao's other issue in his motion to dismiss regarding whether Johnson complied with Miss. Code Ann. § 11-1-58. In his motion to dismiss, Dr. Rao raised the issue of whether Johnson complied with Miss. Code Ann. § 11-1-58 and reasserts this issue on appeal. However, during the hearing on Dr. Rao's motion to dismiss, Dr. Rao did not raise Miss. Code Ann.

12

§ 11-1-58, nor did the trial court rule on this issue in its bench opinion. Likewise, the trial court did not rule on this issue in its final judgment. Further, Dr. Rao did not re-raise the issue of Miss. Code Ann. § 11-1-58 to the trial court for consideration after the trial court's judgment failed to address it.

¶23.    That being said, we find there is no need to address this assignment of error as we affirmed the trial court in Issue I which held that Dr. Rao was not properly served pursuant to M.R.C.P. 4 and affirmed its dismissal of the complaint *with prejudice*. As we affirmed the trial court's judgment in Issue I, Issue I is dispositive of this appeal and this case.

## CONCLUSION

¶24.    For the foregoing reasons, the judgment of the Circuit Court of Grenada County is affirmed.

¶25.    **AFFIRMED**.

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. COBB, P.J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶26.    Because it is my view that service of process upon Rao's receptionist, Melissa Powell (Powell), was sufficient pursuant to Rule 4(d)(1)(A) of the Mississippi Rules of Civil Procedure (M.R.C.P.), and that Irma Johnson (Johnson) substantially complied with the requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002), I respectfully dissent.

> A.    *Whether Service of Process Was Sufficient Pursuant to Rule 4 of the Mississippi Rules of Civil Procedure*

13

M.R.C.P. 4(d)(1)(A) provides:

> The summons and complaint shall be served together. Service by a
> sheriff or process server shall be made as follows:
> (1) Upon an individual other than an unmarried infant or a mentally
> incompetent person, (A) by delivering a copy of the summons and the
> complaint to him personally ***or to an agent authorized by appointment
> or by law to receive service of process***.

(Emphasis added). M.R.C.P. 4(d)(1)(A) permits an agent "authorized ***'by appointment'*** or

***'by law'*** to receive service of process." Although this Court has not precisely defined "***by***

***appointment***," the Southern District of Ohio has defined "by appointment [to mean] an actual

appointment by the defendant, and, if such has been made, service upon the agent gives the

court jurisdiction." ***Whisman v. Robbins,*** 712 F.Supp 632, 636 (S.D. Ohio 1988). Because

Powell explicitly stated that Rao never expressly authorized her to accept service of process

on his behalf, the primary issue before this Court is whether she is a valid ***"agent"*** authorized

"***by law***" to receive service of process on his behalf. This Court has not precisely articulated

a standard to determine whether an employee is a valid ***"agent"*** authorized ***"by law"*** to

accept service of process on behalf of an employer.[6]

---

[6]In ***Williams v. Kilgore***, which the majority cites, this Court held that service of process was valid
on an "office manager who, by custom and practice is vested with the apparent authority to do so." ***Williams
v. Kilgore***, 618 So.2d 51, 56 (1992). In ***Williams***, the deputy sheriff testified that the office manager and other
employees previously accepted service of process on behalf of Kilgore. ***Id***. Therefore, this Court concluded
that since Kilgore had never instructed the deputy sheriff not to allow the office manager or any other
employee to accept service of process on his behalf, the office manager was vested with the apparent authority
to do so. ***Id***. It is my view that Kilgore expressly authorized his office manager to accept service of process
on his behalf by ratifying her conduct. Therefore, similar to the majority, I agree that the facts in ***Williams***
are clearly distinguishable from those in the case currently before this Court. Additionally, I further contend
that this Court's decision in ***Williams*** is totally irrelevant to the current issue before this Court as to whether
Powell was authorized by law to serve as Rao's agent for purposes of service of process.

14

¶27.   The rules which govern service of process should be "applied in a manner that will best effectuate their purpose of giving the defendant adequate notice." ***Direct Mail Specialist, Inc., v. Eclat Computerized Technologies***, ***Inc.,*** 840 F.2d 685, 688 (9th Circuit 1988).  The Georgia Supreme Court has construed their service of process rules and statutes to achieve their underlying purpose. ***Scott v. Atlanta Dairies Cooperative***, 238 S.E.2d 340, 343 (Ga. 1977).  That court has adopted a two-prong test to determine whether an agent is authorized to accept service of process on behalf of an employer. ***Henderson v. Bekaert***, 932 F.2d 1410, 1412 (11th Circuit 1991).   The first prong of the test defines who is considered an agent for purposes of service of process. ***Id***.  "In discussing who is an 'agent' who can properly receive service, the Georgia Supreme Court has said that 'since the object of service of process is to transmit notice of suit to the [defendant], it must be made on an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him.'" ***Henderson***, 932 F.2d at 1412 (quoting ***Scott***, 238 S.E.2d at 343). The second prong of the test considers whether the employer received timely actual notice of the lawsuit. ***Henderson***, 932 F.2d at 1413.

¶28.   This Court has defined the word "agent" when used in service of process statutes and rules, "[to] include agents vested with some general authority and discretion, and not to extend to mere employees having no independent powers." ***Mills v. Wagner***, 94 Miss. 233, 239, 47 So.899, 901 (1908) (citations omitted).  Our definition adequately ensures that only employees with some authority are classified as agents authorized to accept service of process on behalf of an employer.  However, our definition does not expressly provide that

15

the agent must possess a position by which the agent can be expected to inform the employer that he has been served with process. The standard adopted by the Georgia Supreme Court expressly states "[service of process] must be made on an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him." *Scott*, 238 S.E.2d at 343.

¶29. In *Scott*, the Georgia Supreme Court found service to be proper on an employee. *Id*. at 343. The court further found that, although the employee was not an officer, he was more than "a mere clerk, laborer, or servant." *Id*. The employee was in charge of scheduling the delivery of milk and supervising ten other employees. *Id*. The court also found that the employee's duties also consisted of "relay[ing] communications from his employer." *Id*. As such, "the employee could be expected to notify his employer that he had been served with process." *Id*. *See also* ***Ogles v. Globe Oil Co., U.S.A.,*** 171 Ga. App. 785, 786, 320 S.E.2d 848, 849 (1984) (service proper on manager of appellee's store who was responsible for daily operations of the store and supervising other employees) and ***Northwestern Nat'l Ins. Co. v Kennesaw Transp.,*** 168 Ga. App. 701, 702, 309 S.E.2d 917, 919 (1983) (service proper on an employee who had some discretion and authority regarding the management of the office); *compare* with ***Citizens Bank of Hapeville v. Alexander- Smith Academy***, 226 Ga. 871, 872, 178 S.E.2d 178, 179-80 (1970) (service not proper on "personal secretary/typist" because no evidence introduced to establish that she had any discretion or authority regarding the operation of the corporation) and ***Whatley's Interiors, Inc, v. Anderson***, 176 Ga. App. 406,

16

407, 336 S.E.2d 326, 328 (1985) (service not proper on an employee who did not perform any other duties besides those of a secretary/typist).

¶30.    Other courts also have found service of process to be valid on an employee whose job responsibilities provide reasonable assurance that the employee will inform his employer that he has been served with process. *See, e.g.*, ***Top Forms Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa***, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977); (service on secretary was valid because her job responsibilities included handling the daily operations of the corporation; thus she could be expected to notify her employer that he had been served with process); ***Direct Mail Specialist,*** 840 F.2d at 688 (service of process upheld where the receptionist played a large role in the structure of the company); ***Leo v. General Electric Co.,*** 111 F.R.D. 407, 414 (E.D.N.Y 1986) (service of process valid on secretary because she was a corporate employee and she redelivered the summons and complaint to an agent authorized to receive service of process); ***O'Connor v. Altus***, 333 A.2d 545, 557 (N.J. 1975) (service of process upon the receptionist of the managing agent was proper because "she was sufficiently integrated with the small organization to know what to do with the legal papers"); ***Flynn v. Pulaski Construction Co.,*** 2006 U.S. Dist. Lexis 1680, 17 (D.C. 2006) (service of process upon the receptionist/secretary proper where she was sufficiently integrated with the corporation to know what to do with the papers).

¶31.    Similar to the cases discussed *supra*, Powell's job responsibilities provided reasonable assurances that she would inform Rao that he had been served with process. The record indicates that Powell performed duties and responsibilities in addition to those of a

17

receptionist. According to Powell's testimony, her duties included filing, answering the phones, checking patients in, and "whatever else [that] needed to be done." Powell also testified that she "accept[s] stuff all the time" on behalf of Rao. Although the record does not clearly establish "what stuff [Powell] accepts," Rao did not offer any evidence indicating that she failed to give him any of the "stuff" that she had previously accepted on his behalf.

¶32. Like the employee in *Scott*, Powell was more than a mere clerical employee. Her testimony that her duties included "whatever else [that] needed to be done" and "accept[ing] stuff all the time" on behalf of Rao indicates that although her formal title was "receptionist," her responsibilities were more similar to those of an office manager. She had some discretion and authority regarding the operation of Rao's office.

¶33. On the day in question, it is undisputed that Payne, in uniform, entered Rao's office and served Powell with legal papers. The legal papers were not in an envelope, and the title on the first page read "**SUMMONS.**" Powell accepted the legal papers and signed a form acknowledging her receipt of them. Based on Powell's job responsibilities, it would be unreasonable to assume that she would not give Rao the legal papers that were personally delivered to his office by a Deputy sheriff wearing an official uniform. "Clearly, [Powell's] job responsibilities were such as to afford reasonable assurances that [she] would inform [Rao] of the service of process upon him; and it is undisputed that [she] in fact did so in a timely manner." *Ogles*, 320 S.E.2d at 849. Hence, she is authorized by law to serve as Rao's agent and accept service of process on his behalf. Moreover, Rao received actual notice of the lawsuit. So the underlying purpose of the rule, which is to give the defendant adequate

18

notice, was achieved. Because of the aforementioned reasons, I find that service of process was sufficient pursuant to Rule 4 of the M.R.C.P.

      B.      *Whether Strict Compliance with the Statutory Requirements of Miss. Code Ann. § 11-1-58* (Rev. 2002) *is Required*

¶34.    Because I find that service of process was sufficient pursuant to Rule 4 of the M.R.C.P., I am compelled to address Rao's assignment of error. Rao argues in the alternative that if service of process is found to be sufficient, the trial court's judgment to dismiss the case with prejudice should still be affirmed. Rao essentially raises the issue of whether strict compliance with the statutory requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002) is required.

Miss. Code Ann. § 11-1-58 (Rev.2002) states:

(1) In any action against a licensed physician, health care provider or health care practitioner for injuries or wrongful death arising out of the course of medical, surgical or other professional services where expert testimony is otherwise required by law, **the complaint shall be accompanied by a certificate executed by the attorney for the plaintiff declaring that:**

    (a) The attorney has reviewed the facts of the case and has consulted with at least one (1) expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care of negligence and who the attorney reasonably believes is knowledgeable in the relevant issues involved in the particular action, and that the attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of such action; or

    (b) The attorney was unable to obtain the consultation required by paragraph (a) of this subsection because a limitation of time established by Section 15-1-36 would bar the action and that the consultation could not reasonably be obtained before such time expired. A certificate executed pursuant to this paragraph (b) shall be supplemented by a certificate of

19

consultation pursuant to paragraph (a) or (c) within sixty (60) days after service of the complaint or the suit shall be dismissed; or

(c) The attorney was unable to obtain the consultation required by paragraph (a) of this subsection because the attorney had made at least three (3) separate good faith attempts with three (3) different experts to obtain a consultation and that none of those contacted would agree to a consultation.

(Emphasis added).

¶35. Clearly, substantial compliance with Miss. Code Ann. § 11-1-58 (Rev. 2002) satisfies the statutory requirements. Johnson substantially complied with the requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002) by submitting a certificate of expert consultation with the first complaint. As discussed in my dissent in *Arceo v. Tolliver*, I am still of the opinion that strict compliance with the statutory requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002) "only serves to deny the citizens of this State their right to bring claims before the courts for adjudication." *Arceo v. Tolliver*, 2006 Miss. Lexis 650, 19-20 (Graves, J., dissenting).

¶36. This Court has a long-standing history of ensuring that cases are decided on the merits and are not dismissed because of the parties' inadvertence to comply with the "formal rules of pleadings and practice." *Field v. Middlesex Bkg. Co.*, 77 Miss. 180, 26 So. 365 (1899). This Court has adopted the standard of substantial compliance when deciding whether a party has complied with certain provisions of the Mississippi Rules of Civil Procedure and the Mississippi Tort Claims Act.[7] *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So.2d 1252, 1256 (Miss. 2006); *Chassaniol v. Bank of Kilmichael*, 626 So.2d 127-29 (Miss. 1993); *City of*

---

[7]I*n University of Mississippi Medical Center v. Easterling*, this Court adopted a strict compliance standard regarding the ninety-day notice requirement of the Mississippi Tort Claims Act under Miss. Code Ann. § 11-46-11(1) (Rev. 2002). 928 So.2d 815 (Miss. 2006)

20

*Jackson v. Presley,* 2006 Miss. Lexis 649, 17. Although this Court has previously adopted such a liberal standard of compliance, we have emphasized that "we can hardly afford relief under the [MTCA] when there is no effort to comply with the procedural mandates." *Little v. Miss. Dep't of Human Servs*., 835 So.2d 9, 12-13 (Miss. 2002). "Substantial compliance is not the same as, nor a substitute for, noncompliance." *Gale v. Thomas*, 759 So.2d 1150, 1158 (Miss. 1999) (quoting *Carr v. Town of Shubuta,* 733 So.2d 261, 265 (1999). The determination of substantial compliance is a legal, though fact-sensitive, question and is therefore, necessarily decided on an ad hoc basis." *Town of Shubuta,* 733 So.2d at 265.

¶37.    In *City of Jackson v. Presley*, this Court held that the trial judge erred in granting a default judgment against the City. *City of Jackson v. Presley*, 2006 Miss. Lexis 649, 18. This Court concluded that the City substantially complied with Rule 15 of the M.R.C.P. by submitting an untimely amended answer almost four years later.[8] *Id*. at 17. In fact, we stated in *Presley* that the "default was largely technical" in the sense that the original complaint was identical to the amended complaint except for one sentence asserting a claim for property damage.[9] *Id*. The City only failed to respond to "Presley's one sentence for property damage found in the amended complaint."[10] *Id*.

---

[8]Rule 15(a) of the Mississippi Rules of Civil Procedure provides: "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders."

[9]The one sentence added to the amended complaint read as follows: "Additionally, Presley has incurred property damage as a proximate result of Morton's negligence and the resulting accident."

[10]In the untimely filed amended answer the City added three additional affirmative defenses: "(1) the affirmative defense of res judicata based on the Union County law suit; (2) accord and satisfaction based on the execution of the general release in settlement of the first lawsuit; and (3) setoff or credit for sums Presley

¶38. In contrast to *Presley*, this Court in *Walker v. Whitfield Nursing Home*, rejected the plaintiff's claims that she substantially complied with Miss. Code Ann. § 11-1-58 (Rev. 2002). *Walker v. Whitfield Nursing Home,* 931 So.2d 583, 589 (2006). Walker argued that she substantially complied with the statute by consulting with an expert in February 2004, before filing suit on April 7, 2004. *Id*. However, this Court found Walker's arguments to be unpersuasive. *Id*. The record revealed that the defendant never received any written reports or records from Walker's expert. *Id*. In September 2005, Walker filed the expert's report in the court record. *Id*. Hence, this Court found that the issue was not whether Walker *substantially complied* with Miss. Code Ann. § 11-1-58 (Rev. 2002). *Id*. Instead, this Court found that the primary issue was whether Walker, who failed to submit *any notice with the filing of her complaint*, satisfied the statutory requirement. *Id*. Because the complaint was not accompanied by any information stating that Walker had consulted with an expert and also because she never provided the defendant with any information about her expert, this Court held that she failed to comply with the requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002). *Id.*

¶39. The facts in the instant case are more analogous to those in *Presley* than those in *Walker*. Johnson, through inadvertence, failed to submit a certificate of expert consultation with the second complaint, whereas Walker failed to submit any notice with the filing of her complaint. Johnson, like the City in *Presley,* substantially complied with the requirements

---

received in the settlement of the first lawsuit."

of Miss. Code Ann. § 11-1-58 (Rev. 2002) by submitting a certificate of expert consultation with the first complaint. Additionally, Johnson's first complaint and second complaint were also substantially the same as the original answer and amended answer in *Presley*. According to this Court's holding in *Presley*, Johnson's failure to attach the expert consultation to the second complaint was merely a "technical error." Since she attached it to the first compliant and later attached it to her responsive pleadings to the second complaint.[11]

¶40. The chief goal of this Court when construing the meaning of a statute is to find and apply the real intention of the Legislature. *Gambrill v. Gulf States Creosoting Co.,* 216 Miss. 505, 62 So.2d 772, 775 (1953); *see Miss. Casino Operators Ass'n v. Miss. Gaming Comm'n,* 654 So.2d 892, 894 (Miss. 1995). Upon a careful review of the language of Miss. Code Ann. § 11-1-58 (Rev. 2002), it is undisputable that the primary purpose of the statute is to prevent the filing of frivolous suits that are not well founded in the law. Johnson, before filing suit against Rao, consulted with an expert who verified that her claims against Rao were well founded and grounded in the law. Johnson's inadvertence was largely a "technical error" instead of a substantive error, and the overall objective and purpose of the statute was satisfied; therefore, I find that Johnson substantially complied with the requirements of the statute.

¶41. As I articulated in *Arceo*, this Court should not erect barriers that work to deny litigants their constitutionally guaranteed right. *Arceo*, 2006 Miss. Lexis 650, 35 (Graves, J.,

---

[11]Johnson attempted to cure the potential defect by attaching the certificate of expert consultation to Plaintiff's Response to Defendant's Rebuttal to Plaintiff's Response to Defendant's Motion to Dismiss.

dissenting). To require strict compliance with Miss. Code Ann. § 11-1-58 (Rev. 2002) "clearly denies, without due process of law, the plaintiff's right to pursue her claim." *See **Id.*** ("arguing that a cause of action is a species of property which is protected by the Fourteenth Amendment's Due Process Clause (quoting ***Logan v. Zimmerman Brush Co.***, 455 U.S. 422, 428 102 S.Ct. 1148, 1154, 71 L.Ed. 2d 265 (1982)). Because Johnson substantially complied with the requirements of Miss. Code Ann. § 11-1-58 (Rev. 2002), I would remand this case for further proceedings. Therefore, I respectfully dissent.

**DIAZ, J., JOINS THIS OPINION.**