618 So.2d 51 (1992)
Gracie WILLIAMS
v.
Thomas R. KILGORE, M.D. and Lloyd Berrong, M.D.
No. 89-CA-0231.
Supreme Court of Mississippi.
December 17, 1992.
Rehearing Denied June 3, 1993.
*52 James W. Craig, Jackson, for appellant.
Jimmie B. Reynolds, Jr., Michael F. Myers, Steen Reynolds Dalehite & Currie, Robert A. Crawford, Lee B. Agnew Sr., Agnew Agnew & Crawford, Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
This appeal arises from an October 25, 1988, order of the Circuit Court for the Second Judicial District of Hinds County, granting the Appellees' motion for summary judgment in a medical malpractice action. Finding that the discovery rule applies in medical malpractice cases involving latent injuries and diseases, we find that Mrs. Williams' cause of action is not time barred by either Miss. Code Ann. § 15-1-36 or § 15-1-49 (1972). Accordingly, we reverse and remand for a trial on the merits.

I.
Gracie Williams was admitted to the University Medical Center in Jackson, Mississippi, on March 31, 1964, for treatment of a metastic malignant melanoma on her left groin. On April 6, 1964, a bone marrow biopsy was performed by an unknown hematology resident. During the course of that procedure, a biopsy needle broke, leaving a two centimeter fragment lodged in Williams' left iliac wing, an area of the lower back which the medical records indicate is cushioned by the soft tissue of the left buttock.
Williams was told that the needle would be removed the next day when the melanoma on her groin was removed. Surgery was performed on April 7, 1964, by a team which included Appellee, Dr. Kilgore, then a surgical resident and a never-located Dr. Peede. The hematology resident's report, dated April 6, 1964, indicated that he advised Dr. Kilgore and Dr. Peede of the problem and that they would remove the needle. A notation by Dr. Peede states that the needle was removed. Williams further stated that after the operation, she was reassured by one of her doctors that it had been removed. However, the needle was never removed but remained asymptomatic for many years.
Although Dr. Kilgore was a member of the surgical team that removed the cancerous growth from Mrs. Williams' groin area, he indicated that he had no contact with her after the operation, and she stated in her deposition that she did not know if he was one of the doctors she spoke with after surgery. Dr. Berrong, at the time of the operation, was a radiology resident at the University Medical Center, who was assigned on April 10, 1964, "to specifically study the results of the surgery by performing a lymphogram involving the lymph nodes and vessels of the operative area of the groin affected by the metastic malignant melanoma."
Mrs. Williams asserts on appeal, as she did in her complaint, that she only became aware that the needle was still there when she was hospitalized for back pain in September, 1985, although a physician who had treated her earlier that year found no connection between them and so advised her. The needle was surgically removed on October 7, 1985, with the physician's discharge report suggesting a probable linkage between the needle fragment and Williams' recurrent strep infections. However, the surgeons' report stated that "the needle was found to be free floating in the iliac fossa without any inflammatory process. There was absolutely no evidence of an ongoing infection."
Radiology and physicians' reports included in the record demonstrate that Mrs. Williams' various doctors were aware as early as 1972 that the needle had not been removed. There is no evidence, however, to indicate that this information was communicated to her by any of her physicians, despite her regular chemotherapy treatments. A January 16, 1980, the physician's report states "there is noted to be a metallic density needle projecting over the left ilian [sic] crest which, upon questioning the patient, seems to have been left after some form of abdominal surgery was performed in 1966." The physician's notation of Mrs. Williams' response clearly indicates her ignorance *53 of the fact that the biopsy needle had not been removed in 1964, contrary to her doctors' reassurances.
On October 1, 1987, Mrs. Williams filed a complaint against Dr. Kilgore and Dr. Berrong, as well as Dr. R.L. Peede and an unknown hematologist. She alleged that the various defendants, then physicians at the University Medical Center, had been negligent in causing a biopsy needle to break and remain lodged in her incident to treatment for metastic malignant melanoma in early April, 1964.
Summons for the defendants were issued on October 1, 1987. The return of service indicated that personal service had been made on Drs. Kilgore and Berrong and that the whereabouts of Dr. Peede were unknown. When Drs. Kilgore and Berrong failed to respond, an entry of default pursuant to MRCP Rule 55(a) was made on December 18, 1987.
Dr. Kilgore filed a motion to set aside the entry of default on January 8, 1988, asserting that service was made on his office manager, who was not authorized to accept service of process for him and that Williams' complaint was barred by the statute of limitations. On the same day, the circuit court filed an order granting Dr. Kilgore's motion for additional time to respond to the complaint.
A Judgment upon Writ of Inquiry was filed against Dr. Berrong on January 6, 1988. He filed a motion to set aside the entry of default and judgment on January 12, 1988.
A hearing on the defendants' motions to set aside the entries of default was held on April 15, 1988. The Circuit Court, finding that proper service of process was not made on either defendant pursuant to MRCP Rule 4, granted the motions.
Drs. Kilgore and Berrong then filed answers to Williams' original complaint in May, 1988, raising the affirmative defense that the action was barred by the statute of limitations. They separately filed motions for summary judgment in August, 1988. Finding that Williams' action was time-barred by Miss. Code Ann. § 15-1-49 (1972), the Circuit Court granted the motions on October 25, 1988.

II.
Our inquiry today focuses on whether Miss. Code Ann. § 15-1-36 or § 15-1-49 (1972) governs a cause of action for medical malpractice when the negligent act or omission occurred in 1964, but was not discovered until 1985. Applying our liberal analysis of the discovery rule to § 15-1-36, we find that Mrs. Williams' claim is not barred by the statute of limitations.
Miss. Code Ann. § 15-1-49 (1972), the general statute of limitations which governed medical malpractice actions prior to 1976, provided that "all actions for which no other period of limitation is prescribed shall be commenced within six years after the cause of such action accrued, and not after." Under that statute, the cause of action "accrue[d] and the statute beg[an] to run on the day of the wrongful act or omission which constitutes the malpractice, not from the time of the discovery thereof." Smith v. McComb Infirmary Association, 196 So.2d 91, (Miss. 1967), citing Wilder v. St. Joseph Hospital, 225 Miss. 42, 82 So.2d 651 (1955). The statute, however, contained no definition of "accrual," which we defined as follows in Owens Illinois v. Edwards, 573 So.2d 704 (Miss. 1990):
[A] discovery rule exists in conjunction with § 15-1-49 (1972) in the case of a negligence or products liability cause of action involving latent disease. To alleviate any possible confusion, we find that the discovery rule adopted is identical to the rule provided in Miss. Code Ann. § 15-1-49(2) (Supp. 1990). The cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease.
Id. at 709. Thus, while Smith and Wilder may have been good law then, today, they are no longer.
On July 1, 1976, the applicability of Miss. Code Ann. § 15-1-49 (1972) to medical malpractice actions was supplanted by the enactment of Miss. Code Ann. § 15-1-36 *54 (1972) (as amended), which created a two year statute of limitations specifically for medical malpractice actions. Although the new statute shortened the limitation period, it liberalized and memorialized the definition of "accrual," providing that the statute begins to run "from the date the alleged act, omission or neglect shall or with reasonable diligence might have first been known or discovered." § 15-1-36(1). § 15-1-36(3) further provided that the new statute applied to claims which "accrued on or after July 1, 1976." In Smith v. Sanders, 485 So.2d 1051 (Miss. 1986), we explained the discovery rule as follows:
The focus is upon the time that the plaintiff discovers, or should have discovered, by the exercise of reasonable diligence, that he probably had an actionable injury. The operative time is when the plaintiff can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causal relationship of the injury and the conduct of the medical practitioner.

485 So.2d at 1052 (emphasis added).
In other contexts, particularly asbestosis cases, where it may be decades before symptoms of the disease become apparent, we have read the word "accrue" to import a discovery rule into § 15-1-49. The case sub judice is analogous to those involving latent injuries and diseases, which are governed by Miss. Code Ann. § 15-1-49, the general three year statute of limitations, which now also employs the discovery standard. An individual may know that a wrongful act such as exposing employees to asbestos or other dangerous chemicals has occurred at some time in the past, but be unaware that he has suffered any injury therefrom. As in the latent disease cases, the effects of Mrs. Williams' injury did not manifest themselves until many years after the negligent act or omission. In Owens-Illinois, 573 So.2d at 706-707, we laid to rest the old notion that the statute of limitations begins to run at the time an act of negligence occurs, and held that a cause of action must be completed before an action can be commenced and a tort is not completed until an injury occurs. Faced with determining when Edward's asbestosis claim began to accrue, we specifically stated that:
A cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to use becomes vested. Rankin v. Mark, 238 Miss. 858, 120 So.2d 435 (1960); Aultman v. Kelly, 236 Miss. 1, 109 So.2d 344 (1959); Walley v. Hunt, 212 Miss. 294, 54 So.2d 393 (1951); and Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So.2d 344 (1943). A cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action accrues, it will generally be dismissed if proper objection is made. Euclid-Miss. v. Western Cas. & Sur. Co., 249 Miss. 547, 163 So.2d 676 (1964); Boydstun v. Pearson, 239 Miss. 479, 123 So.2d 621 (1960); and Miller v. Fowler, 200 Miss. 776, 28 So.2d 837 (1947).

Estate of Kidd v. Kidd, 435 So.2d 632, 635 (Miss. 1983). To the same effect is Smith v. Temco, Inc., 252 So.2d 212, 216 (Miss. 1971), which states that "[t]he tort is not complete until the injury occurs...."
573 So.2d at 706-707.
Although the Court viewed an asbestosis injury as "inherently undiscoverable," as distinguished from Mrs. Williams' injury, it refused to hold that the cause of action accrues on the date that the plaintiff discovers the wrongful act. Rather, it begins to accrue on the date the plaintiff discovers his or her injury or disease. In this instance, Mrs. Williams began to experience infections and back pain in 1985. Moreover, this is the date she discovered that the needle was causing her problems, never having been informed previously that the needle from the 1964 biopsy procedure remained lodged within her.
We have applied the discovery rule even to certain "inherently undiscoverable" intentional torts. Staheli v. Smith, 548 So.2d 1299 (Miss. 1989), a defamation case, arose when the plaintiff, a university professor, discovered the existence of derogatory letters in his tenure file some two *55 years after they were written. Id. at 1301. Finding that his claim was not barred by the one-year statute of limitations set forth in Miss. Code Ann. § 51-1-35, the Court created an exception for:
that limited class of libel cases in which, because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed. In such rare instances, we do not believe a plaintiff can be accused of sleeping on his rights.
Id. at 1303.
We therefore reject the Appellees' contention that Mrs. Williams' claim was extinguished in April of 1970 under Miss.Code § 15-1-49 and thus cannot be "revitalized" under the more liberal Miss. Code Ann. § 15-1-36, which was adopted six years later. It is well-established that prescription does not run against one who has neither actual nor constructive notice of facts that would entitle him to bring an action. Ayo v. Johns-Mansville Sales Corp., 771 F.2d 902, 907 (5th Cir.1985). Mrs. Williams had been informed that a needle broke during the biopsy procedure. She was, however, reassured by her physicians that it would be removed and more significantly, that it had been removed during surgery. Thus, she was not aware that the negligent act complained of  failure to remove the offending object  had even occurred. There is no evidence that any of her physicians had knowledge of the negligent act prior to 1972, when the presence of the needle was first indicated in her medical records, much less that this information was ever communicated to her. Further, there is no evidence that Mrs. Williams requested copies of her medical records prior to this litigation, nor is a patient obligated to do so. Thus, to accept the Appellees' argument and find that Mrs. Williams' cause of action was barred before she or any of her physicians knew that a negligent act had occurred would require us to construe § 15-1-49 as a statute of repose. As we stated in Gentry v. Wallace, 606 So.2d 1117, 1122 (1992), "[t]his Court views statutes of repose with disfavor, and if the statute is ambiguous, we place upon it a construction which favors preservation of the plaintiff's cause of action."
We find therefore that Mrs. Williams properly filed her complaint in this case within two years of that time, thus conforming with the statute of limitations for medical malpractice prescribed in Miss. Code Ann. § 15-1-36. In accordance with our analysis of latent injuries and diseases in Owens-Illinois, her claim likewise would not be barred under the general statute of limitations, Miss. Code Ann. § 15-1-49.

III.
Mrs. Williams further contends that the circuit court erred in setting aside the entry of default against Dr. Kilgore and the default judgment against Dr. Berrong. We make no express finding as to the propriety of the Circuit Court's decision, except to note that the decision to grant or set aside a default judgment is "addressed to the sound discretion of the trial court." Pointer v. Huffman, 509 So.2d 870, 875 (1987). This discretion must be exercised in accordance with the rules set forth in M.R.C.P. 55(c) and 60(b). Guaranty National Insurance Co. v. Pittman, 501 So.2d 377, 388 (1987). Absent an abuse of discretion, we will not disturb the rulings of the trial court on a default judgment. Id. In determining whether the trial court has abused its discretion, we consider three factors: "whether the defendant has good cause for default ... whether the defendant in fact has a colorable defense to the merits of the claim, and ... the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside." Johnson v. Weston Lumber & Building Supply Co., 566 So.2d 466, 468 (Miss. 1990); King v. King, 556 So.2d 716 (Miss. 1990); H & W Transfer and Cartage Service, Inc. v. Griffin, 511 So.2d 895 (Miss. 1987). In his findings of fact, the circuit judge stated that proper service of process pursuant to M.R.C.P. Rule 4 had not been made on either defendant; that each had raised meritorious defenses; that the judgment against Dr. Berrong *56 would be prejudicial to him; and that each had shown good cause to set aside the entries of default pursuant to M.R.C.P. Rule 55(c).
In order to enter a default, "the court must have jurisdiction over the party against whom judgment is sought, which also means that he must have been effectively served with process." Comment to M.R.C.P. 55, citing, Arnold v. Miller, 26 Miss 152 (1853). Both Drs. Kilgore and Berrong assert that they were not personally served with process pursuant to present M.R.C.P. 4, effective March 1, 1985. Looking first at the service made on Dr. Kilgore, M.R.C.P. 4(d)(1)(A) specifies that service shall be made "by delivering a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process." The summons and complaint were left with Dr. Kilgore's office manager, Roy Cliburn. Both Cliburn and Dr. Kilgore stated in their affidavits that Cliburn was not authorized by Dr. Kilgore as his agent to accept service of process. Yet Deputy Sheriff Usry testified that on many occasions Cliburn had accepted service on behalf of Dr. Kilgore and the other doctors in his office and that he had never been instructed to the contrary on this or any other occasion. We find nothing in our case law which precludes the acceptance of service of process by an agent such as an office manager, who, by custom and practice, is vested with apparent authority to do so. Relying to his detriment on his past experiences in serving process on physicians in Dr. Kilgore's office as well as upon Cliburn's acceptance of the documents, the Deputy Sheriff appears to have properly served process in accordance with Rule 4(d)(1)(A). As previously stated, it appears that the lower court relied on assertions that the statute of limitations had run on both doctors. If this assumption is correct, the circuit court is directed to further review this matter in light of our decision today. We do not at this time make any further pronouncements.
Dr. Berrong asserts that the summons and complaint returned as personally served upon him at his residence in Raymond was never received. He further contends that it was not received by his wife, despite the correction to that effect made by Sheriff Kilpatrick. Even if service was made upon Mrs. Berrong, mere delivery of the summons and complaint does not render service complete. M.R.C.P. 4(d)(1)(B) provides that when such service is made, it must be followed by the mailing of a copy of the documents by first class mail to the defendant at the residence where process was delivered. Service is only complete ten days after the mailing. Finding no evidence in the record to indicate that a copy of the summons and complaint was mailed to Dr. Berrong at his residence, we therefore hold that the circuit court did not err in finding that valid service had not been made upon him.
Accordingly, we reverse and remand for a trial on the merits.
REVERSED AND REMANDED FOR A NEW TRIAL.
DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ., concur.
BANKS, J., concurs in result with separate written opinion joined by PITTMAN, J.
HAWKINS, P.J., dissents with separate written opinion joined by ROY NOBLE LEE, C.J.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
BANKS, Justice, concurring:
I agree with the majority that the judgment of the trial court must be reversed. I would do so on more narrow grounds, however, and, I question the determination by this Court that the statute of limitations did not begin to run until 1985. In my view, the majority confuses the manifestation of injury with the onset of injury. While the former may be significant to the question of discovery, it is not necessarily dispositive and, in the instant case, the onset of injury was when the foreign object was left in Mrs. Williams' body.
*57 There was an important exception to the rule announced in Wilder v. St. Joseph Hospital, 225 Miss. 42, 82 So.2d 651 (1955), to the effect that a cause of action for medical negligence accrued at the time of the negligent act regardless of whether the injured party was or should have been aware of the act. The exception was that where the negligent physician fraudulently conceals the act, the statute of limitations did not begin to run until discovery. Wilder, 82 So.2d at 653. Here, there is evidence to the effect that the physicians told Mrs. Williams that they had removed the needle when, in fact, they had not. Thus, at a minimum, there exists at least a genuine dispute of material fact as to whether the statute of limitations began to run at the time that the needle was left, even under the Wilder rule.
Assuming, as we must for present purposes, that this issue is resolved in favor of Williams, the question of limitations then must be determined with reference to when she should have known that the needle was there. Whether Mrs. Williams knew or should have known in 1972 or 1980, when physicians' reports indicated the presence of the needle, is an issue of fact to be determined by a jury. For that reason, I would reverse and remand for further proceedings during which the issue of the statute of limitations would be alive for determination based on the proper resolution of the factual issues here indicated.
The majority seems to suggest that no cause arose until the needle caused an infection regardless of whether Williams became aware or should have become aware of its presence at an earlier time. I disagree. While the infection may have led to discovery and, therefore, marked the date of accrual under a discovery rule, a patient with a foreign object negligently left in her body has suffered injury sufficient for a cause of action which accrues on discovery regardless of whether it has caused further disease or injury at that time. See, e.g., Shillady v. Elliot, 114 N.H. 321, 323, 320 A.2d 637, 638 (1974); Parker v. Vaughn, 124 Ga. App. 300, 301, 183 S.E.2d 605, 606 (1971); Billings v. Sister of Mercy, 86 Idaho 485, ___, 389 P.2d 224, 232 (1964); and Gaddis v. Smith, 417 S.W.2d 577, 580 (Tex. 1967). The inhalation of toxic substances may cause injury which is not discoverable until the onset of a resulting disease, the deposit of a detectible and removable foreign object is a different matter.
PITTMAN, J., joins this opinion.
HAWKINS, Presiding Justice, dissenting:
Miss. Code Ann. § 15-1-49 (1972) states: "All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of action accrued, and not after." The 1972 Code brought forward a statute which had been in effect at least 75 years. Section 3097, Code 1906.
There was no specific statute of limitations addressing malpractice actions, and we have held this six-year section applied. Ross v. Hodges, 234 So.2d 905 (1970). We likewise have interpreted this statute as having begun to run from date of injury, not from date of discovery of the injury. Kilgore v. Barnes, 508 So.2d 1042, 1044 (Miss. 1987); Smith v. McComb Infirmary Assoc., 196 So.2d 91, 92-93 (Miss. 1967); M.T. Reed Construction Co. v. Jackson Plating Co., 222 So.2d 838, 840 (Miss. 1969); Wilder v. St. Joseph Hospital, 225 Miss. 42, 45-46, 82 So.2d 651, 652 (1955).
By Chapter 311, Laws 1989, the Legislature amended Miss. Code Ann. § 15-1-49 to read:
§ 15-1-49. Limitations applicable to actions not otherwise specifically provided for.
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

*58 (3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.
In the amendment the Legislature gave some bad and some good news. It shortened the statutory period to three years, but also provided that the statute did not begin to run until the injury was discovered by the plaintiff, or by reasonable diligence he could have discovered it. In amending the statute, the Legislature clearly recognized that our interpretation of the original Miss. Code Ann. § 15-1-49 was correct, because the amended statute provides that date of discovery only applies to actions then pending or subsequently filed. The Legislature had no authority to extend the statute of limitations on actions already barred at the time of its enactment. Perkins v. State, 487 So.2d 791, 792 (Miss. 1986); Garrett v. Beaumont, 24 Miss. 377, 379 (1851).
As noted, the recent case of Kilgore v. Barnes recognized that under the original Miss. Code Ann. § 15-1-49 the statute ran from date of injury, not from date of discovery. That case involved a selection of which statute of limitations to apply, the original Miss. Code Ann. § 15-1-49 (the six-year statute), or Miss. Code Ann. § 15-1-36 (a specific malpractice statute enacted in 1976; a two-year statute of limitations). Miss. Code Ann. § 15-1-36, however, runs from date of injury or from which the injury "with reasonable diligence might have been first discovered." In that case the plaintiff, Barnes, was injured in June 28, 1974, but did not discover it until June 21, 1982. In 1976, less than six years after date of injury and before Miss. Code Ann. § 15-1-49 had run, the Legislature enacted Miss. Code Ann. § 15-1-36. We applied Miss. Code Ann. § 15-1-36 because the plaintiff still had a viable cause of action in 1976 when it was enacted. We made it quite clear, however, that had Barnes's injury occurred more than six years prior to the enactment of § 15-1-36, his claim would have been barred, and § 15-1-36 would not have saved him. Indeed, if we had made the interpretation of Miss. Code Ann. § 15-1-49 as now made by the majority, there would have been no need even to consider Miss. Code Ann. § 15-1-36.
Owens-Illinois, Inc. v. Edwards, 573 So.2d 704 (Miss. 1990), cited by the majority, involved a products liability case in which we held that in this type of case we would apply § 15-1-49 from date of discovery of the injury as opposed to date of injury. In that case, however, we specifically cited Kilgore v. Barnes and its holding, and did not overrule it, thus suggesting that at least in malpractice actions our consistent holdings still applied. We manifestly made no suggestion that our holding in Kilgore v. Barnes was in error or that we were extending our holding in Owens-Illinois, Inc. v. Edwards to malpractice actions, or actions other than product liability cases.
Today's holding overrules established precedent and I respectfully dissent.
ROY NOBLE LEE, C.J., joins this opinion.