¶ 20. Because today's opinion effectively precludes any action against a physician where the patient does not discover the injury before the one-year statute of limitations, I must dissent.
 ¶ 21. The assertion that "we must focus our inquiry on when a plaintiff, exercising reasonable diligence, should have first discovered the negligence, rather than the injury," simply defies logic. Discovery of the injury is necessarily discovery of negligence. A cause of action for negligence does not exist without injury. It is elementary tort law that in order to prove negligence, a plaintiff must prove duty, breach of duty, proximate cause, and an injury. Holliday v. Pizza Inn,659 So.2d 860, 864 (Miss. 1995) (quoting Skelton v. TwinCounty Rural Elect. Ass'n, 611 So.2d 931, 936 (Miss. 1992)). Accordingly, in medical malpractice cases, "the discovery rule protects persons with latent injuries." Neglen v.Breazeale, 945 So.2d 988, 990 (Miss. 2006). See alsoFlores v. Elmer, 938 So.2d 824 (Miss. 2006) (applying latent injury analysis to medical malpractice claim); Blailock v.Hubbs, 919 So.2d 126 (Miss. 2005) (finding injuries were not latent and therefore the discovery rule did not apply);Wright v. Quesnel, 876 So.2d 362 (Miss. 2004) (same);Robinson v. Singing River Hosp. Sys., 732 So.2d 204
(Miss. 1999) (same); Williams v. Kilgore, 618 So.2d 51
(Miss. 1992) (applying latent injury analysis to medical malpractice claim).[9]
 ¶ 22. The majority finds that the "confusion" over the application of latent injury analysis to medical malpractice cases is a result of the language found in Miss. Code Ann. § 15-1-49. However, even before this statute was amended to include a provision for latent injuries, this Court recognized the common law exception for latent injuries. Barnes,733 So.2d at 205 (Miss. 1999) (citing Schiro v. AmericanTobacco Co., 611 So.2d 962, 965 (Miss. 1992)). Furthermore, as explained in Williams,
 [t]he applicability of Miss. Code Ann. § 15-1-49
(1972) to medical malpractice actions was supplanted by the enactment of Miss. Code Ann. § 15-1-36
(1972) (as amended), which created a *Page 1011 
two year statute of limitations specifically for medical malpractice actions. Although the new statute shortened the limitation period, it liberalized and memorialized the definition of "accrual," providing that the statute begins to run "from the date the alleged act, omission or neglect shall or with reasonable diligence might have first been known or discovered."
618 So.2d at 53-54. The Court went on to say, "[t]he operative time is when the plaintiff can reasonably be held to haveknowledge of the injury itself, the cause of the injury, and the causal relationship of the injury and the conduct of the medical practitioner." Id. at 54 (quoting Smith v. Sanders, 485 So.2d 1051 (Miss. 1986)) (emphasis supplied). The majority, however, not only refuses to recognize our prior precedent, but the common law as well.
 ¶ 23. The majority holds that medical malpractice plaintiffs must file their causes of action even if they are unaware of any injury. However, had the plaintiff in this case filed a claim before his diagnosis, his case would have been dismissed because he could not have proven any injury. It has been long established that, "[a] cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action accrues, it will generally be dismissed if proper objection is made." Owens-Illinois,Inc. v. Edwards, 573 So.2d 704, 706 (Miss. 1990) (quotingEstate of Kidd v. Kidd, 435 So.2d 632, 635 (Miss. 1983)).
 ¶ 24. For the foregoing reasons, the majority's analysis is highly flawed, and this Court should not remove the long-established latent injury exception from medical malpractice claims.
 ¶ 25. Regarding the latent injury issue, our summary judgment jurisprudence demands that "the evidence be viewed in the light most favorable to the party against whom the motion has been made." Gant v. Maness, 786 So.2d 401, 403
(Miss. 2001) (citing Massachusetts Bay Ins. Co. v.Joyner, 763 So.2d 877, 878 (Miss. 2000)). According to case law, "discovery [of an injury or disease] is an issue of fact to be decided by a jury where there is a genuine dispute."Schiro v. American Tobacco Co., 611 So.2d 962
(Miss. 1992). In reviewing the record, there remains an issue of fact as to whether Mr. Sutherland had knowledge of the injury or was aware of his symptoms.
 ¶ 26. First, the majority improperly construes the immediate side-effects that Mr. Sutherland experienced and his subsequent "potentially irreversible syndrome" as one and the same. Mr. Sutherland experienced a number of symptoms while taking Zyprexa, including oversedation and increased anxiety. Once he stopped taking the medication, Mr. Sutherland testified that these immediate side-effects eventually stopped. It was not until his visit with Dr. Voulters, where he was finally diagnosed with TDS, that he was aware of any potentially permanent neurological disorder. As Dr. Hiatt, Mr. Sutherland's expert, stated in his sworn affidavit, "Robert Sutherland could not have known that the tardive dyskinesia was caused by the Zyprexa prescribed by Dr. Ritter until after he was diagnosed with tardive dyskinesia on January 31, 2002."
 ¶ 27. According to the Center for the Study of Autism, "[t]ardive dyskinesia may appear anywhere from three months toseveral years after initial use of these medications." Stephen M. Edelson, Tardive Dyskinesia, Center for the Study of Autism (1995) (emphasis added). Therefore, while Mr. Sutherland may have been aware of some immediate adverse side-effects, he has sufficiently demonstrated that neither he nor any medical professional *Page 1012 
could have known of any permanent neurological damage until he was diagnosed by Dr. Voulters. By April 2001, Mr. Sutherland had already sought a second opinion at St. Dominic, yet there is no mention of TDS in any of his medical records from this time. I fail to see what further "reasonable diligence" Mr. Sutherland could have exercised in order to discover his resulting syndrome, which may take years to develop. Mr. Sutherland stated in his deposition that Dr. Ritter never told him that TDS was a possible side-effect. Mr. Sutherland also stated that Dr. Ritter told him to continue taking the drug and that it was "safe." These facts are further supported by Dr. Ritter's notes.
 ¶ 28. Second, Mr. Sutherland's medical records indicate that he was referred to St. Dominic "because of possible Xanax abuse," and not because of the adverse side effects he experienced with Zyprexa. In his motion for summary judgement, Dr. Ritter states that "at that time he expressed a specific perceived need to get `off of Zyprexa.' See Exhibit `G'." Yet, Exhibit G consists of a single page from Mr. Sutherland's medical records which makes no mention of Zyprexa. Furthermore, Mr. Sutherland was taking a number of drugs, and testified that at the time he checked into St. Dominic, he wanted to "come off those medications," including Xanax and Zyprexa.
 ¶ 29. We have held that in cases involving summary judgment "[i]f there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party." Aetna Casualty Sur. Co. v. Berry,669 So.2d 56, 70 (Miss. 1996) (citing Ratliff v. Ratliff,500 So.2d 981, 981 (Miss. 1986)). The record demonstrates substantial doubt as to whether a fact issue exists. Therefore, because there are material issues of fact that should be left to the jury, summary judgement was improper and the case against Dr. Ritter should proceed.
EASLEY AND GRAVES, JJ., JOIN THIS OPINION.
[9] The discovery rule also protects medical malpractice plaintiffs who were aware that an injury had occurred but could not discover the cause of the injury until the statute of limitations had run. Sarris v. Smith, 782 So.2d 721
(Miss. 2001); Pickens v. Donaldson. 748 So.2d 684
(Miss. 1999); Smith v. Sanders, 485 So.2d 1051 (Miss. 1986); Barnes v. Singing River Hosp. Sys.,733 So.2d 199, 206 (Miss. 1999).