989 So.2d 901 (2007)
Hilda Patsy SPURGEON and Ottis Jerome Spurgeon, Appellants
v.
Edwin G. EGGER, Appellee.
No. 2005-CA-01952-COA.
Court of Appeals of Mississippi.
December 11, 2007.
Rehearing Denied April 15, 2008.
Certiorari Denied August 7, 2008.
*902 William R. Armstrong, Jackson, attorney for appellants.
Steven Cavitt Cookston, Clinton M. Guenther, Tommie G. Williams, Greenwood, attorneys for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. Hilda and Ottis Spurgeon sued Dr. Edwin Egger for medical malpractice. One hundred eleven days after the Spurgeons filed their complaint, a process server served Dr. Egger's medical assistant. The process server's return showed that he personally served Dr. Egger. Three days later, Dr. Egger's attorney sent the Spurgeons a letter and stated that Dr. Egger had notice of the lawsuit and that he planned to contest it. That letter also indicated that Dr. Egger was involved in bankruptcy proceedings.
¶ 2. Approximately three weeks later, Dr. Egger filed a motion to dismiss based on insufficient service of process. The circuit court found insufficient service of process and dismissed the Spurgeon's complaint. The Spurgeons appeal and claim that service of process was completed. Alternatively, the Spurgeons claim that if service of process was incomplete, the circuit court erred when it did not find excusable neglect for the Spurgeons' failure to *903 serve Dr. Egger within the mandatory 120 day period for service. After careful consideration, we find that the circuit court erred when it did not find good cause for the Spurgeon's failure to serve Dr. Egger within the mandated time for service of process. Accordingly, we reverse the circuit court and remand this matter for a trial on the merits.

FACTS AND PROCEDURAL HISTORY
¶ 3. On April 24, 2002, Dr. Edwin Egger performed cataract surgery on Patsy Spurgeon. According to Patsy, during her surgery, she "experienced extreme pain in her eye" and she heard Dr. Egger say, "I've stuck a hole in her eye." Just four days short of the two-year statute of limitations, Patsy and her husband, Ottis Spurgeon, sued Dr. Egger in the Washington County Circuit Court for medical malpractice in performing her cataract surgery. The Spurgeons claimed that Patsy had "a dislocated intraocular lens implant and vitreous hemorrhage."
¶ 4. On August 10, 2004, a process server named Dennis Faust, served Dr. Egger's office assistant, Amanda Boozer, with a summons and complaint. Faust filled out a return and indicated that he personally served Dr. Egger with process. Three days later, Dr. Egger's attorney, Tommie Williams, sent a letter to William Armstrong, counsel for the Spurgeons. Within that letter, Williams stated:
Clint Guenther and I will be representing Dr. Egger in connection with Ms. Spurgeon's claim.
First, be advised that Dr. Egger is currently involved in a bankruptcy proceeding. Mr. Martin Kilpatrick of Greenville is representing the doctor in that proceeding. As soon as we can contact Mr. Kilpatrick and obtain a copy of the petition, we will file that with the clerk in Washington County invoking the automatic stay.
We are willing, during the time that this case is stayed, to investigate your claim against the doctor, but in order to do so, we will need copies of Ms. Spurgeon's medical records. If you will agree to provide those records, we would appreciate it.
¶ 5. On August 23, 2004, Dr. Egger's attorneys sent Mr. Armstrong a second letter. Within that letter, Clint Guenther stated, "I understand that Dr. Egger was served with process on August 11, 2004, but I also understand that Dr. Egger is in bankruptcy."
¶ 6. On September 9, 2004, Dr. Egger filed a motion to dismiss and alleged that the Spurgeons failed to personally serve him with process. Dr. Egger noted that the Spurgeons filed their complaint four days before the two-year statute of limitations expired. Dr. Egger took the position that, because the Spurgeons did not serve him with process within 120 days, the statute of limitations began to run on August 18, 2004, and expired four days later.
¶ 7. The circuit court conducted a hearing on Dr. Egger's motion to dismiss. After each side presented its arguments, the circuit court concluded that the Spurgeons did not complete service of process because Boozer did not have apparent authority to accept process for Dr. Egger. Further, because service of process was incomplete, the statute of limitations expired and the Spurgeons did not establish good cause for their failure to serve Dr. Egger within the statute of limitations. Accordingly, the circuit court dismissed the Spurgeons' complaint. Aggrieved, the Spurgeons appeal.

*904 ANALYSIS

I. WHETHER THE CIRCUIT COURT ERRED WHEN IT DID NOT FIND EXCUSABLE NEGLECT FOR THE SPURGEONS' FAILURE TO SERVE DR. EGGER WITH PROCESS WITHIN 120 DAYS OF FILING THEIR COMPLAINT
¶ 8. The Spurgeons claim the circuit court erred when it dismissed their complaint. Naturally, Dr. Egger disagrees and submits the circuit court was correct. Though they filed their complaint four days before the statute of limitations expired, it is undisputed that the Spurgeons filed their complaint timely and within the two year statute of limitations incident to medical malpractice actions. E.g., Miss. Code Ann. § 15-1-36(2) (Rev.2003). As such, the statute of limitations was tolled for the 120-day period set forth pursuant to M.R.C.P. 4(h). Owens v. Mai, 891 So.2d 220, 223(¶ 16) (Miss.2005).
¶ 9. The Spurgeons then had to bring Dr. Egger within the personal jurisdiction of the Washington County Circuit Court. "The existence of personal jurisdiction depends upon the presence of reasonable notice to the defendant that an action has been brought." Lexington Ins. Co. v. Buckley, 925 So.2d 859, 865(¶ 25) (Miss.Ct.App.2005). "Service of process is simply the physical means by which personal jurisdiction is asserted." Id.
¶ 10. The Spurgeons hired Dennis Faust, a professional process server, to serve Dr. Egger. One-hundred-eleven days after the Spurgeons filed their complaint, Faust went to Dr. Egger's medical clinic to serve Dr. Egger. However, Faust did not serve Dr. Egger personally. Instead, he served Amanda Boozer, Dr. Egger's office assistant. Not only that, Faust did not tell Boozer what the documents were.
¶ 11. Despite the fact that Faust served Boozer rather than Dr. Egger, Faust completed a return and swore that he personally served Dr. Egger with process. Faust was incorrect. He did not accomplish personal service of process upon Dr. Egger when he served Boozer. To complete personal service of process upon an individual Mississippi resident (other than an unmarried infant or an incompetent person), a process server must deliver "a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process." M.R.C.P. 4(d)(1)(A).[1]
¶ 12. It is undisputed that Dr. Egger's office assistant, Boozer, had no authority to receive service of process for Dr. Egger. Boozer was not Dr. Egger's registered agent for service of process. Even so, there are instances in which a person may have apparent authority to accept service of process for another person. "An agent may have either express authority to receive process on behalf of the defendant, or may enjoy apparent authority." Cooley v. Brawner, 881 So.2d 300, 302(¶ 10) (Miss.Ct.App.2004) (citing Jeffrey Jackson, Mary Miller, Ronald C. Morton, & Justin Matheny, Civil Procedure, *905 2 Ency. of Miss. Law § 13:33 (Jeffrey Jackson & Mary Miller eds.2001)).
¶ 13. "An apparent or ostensible agent is one whom the principal has intentionally or by want of ordinary care induced third parties to believe is his agent, although no authority has been conferred on him either expressly or by implication." Id. (citing 2A C.J.S. Agency § 20 (1972)). One may also be an apparent agent if he "reasonably appears by third parties to be the authorized agent of the principal." Id. The circuit court found that Boozer was not Dr. Egger's apparent agent. The Spurgeons claim the circuit court erred. We are mindful that questions of whether a person has apparent authority to accept service of process for another is a factual issue to be decided by the chancellor, and where a circuit court judge sits without a jury, the circuit court is entitled to the same deference as a chancellor, and the circuit court's findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. Id. at (¶ 11); Jones v. Jones, 760 So.2d 828, 830(¶ 10) (Miss.Ct.App.2000).
¶ 14. In Williams v. Kilgore, 618 So.2d 51, 56 (Miss.1992) a deputy sheriff left a summons and complaint with a doctor's office manager. Both the office manager and the doctor executed affidavits that indicated the office manager's lack of authority to act as the doctor's agent for service of process. However, the deputy sheriff testified that "on many occasions" the office manager accepted service of process for doctors and that "he had never been instructed to the contrary on this or any other occasion." Finding that "nothing in our case law which precludes the acceptance of service of process by an agent such as an office manager, who, by custom and practice, is vested with apparent authority to do so" the supreme court held that the deputy "properly served process in accordance with Rule 4(d)(1)(A)." Unlike the office manager in Kilgore, there is no evidence that Boozer routinely accepted service of process for Dr. Egger.
¶ 15. We cannot find that the circuit court erred when it concluded that Boozer did not have apparent authority to accept service of process on Dr. Egger's behalf. Boozer testified at the hearing on Dr. Egger's motion to dismiss. According to Boozer, Faust did not identify himself as a process server. Faust did not ask whether Boozer could accept process for Dr. Egger. Boozer did not tell Faust that she could not accept process for Dr. Egger because Faust did not tell Boozer the manilla envelope contained a summons and complaint. She testified that Faust handed her some papers, but when he gave them to her, she did not know what the papers were. Faust simply said, "I've got something for Dr. Egger" or "Give this to Dr. Egger" and handed her a manilla envelope. She did not open the envelope. Instead, she put it in Dr. Egger's "to read" stack. Dr. Egger's "to read" stack normally contained Dr. Egger's mail, "post-op notes or any kind of documentation of a patient [Dr. Egger] referred to another physician." Boozer did not realize that Faust attempted to serve Dr. Egger through her until Dr. Egger read the contents of the envelope. Further, Boozer had never been served with process before. She normally worked "the back" and she was working "the front" that day.
¶ 16. As in Cooley, we must find that the evidence is insufficient to make a determination that Boozer was a de facto agent for Dr. Egger. Cooley, 881 So.2d at 303(¶ 15). As such, we conclude that Boozer did not have the apparent authority to act as Dr. Egger's agent for service of process. Like Cooley, this opinion is not intended to suggest that there can never be such a finding of agency, but *906 merely that the facts before this Court do not justify such a finding. Id.
¶ 17. Because Boozer had neither the express nor apparent authority to accept service of process for Dr. Egger, the Spurgeons' 120-day deadline to serve Dr. Egger ended nine days after Faust served Boozer. At that point, the two-year statute of limitations began to run again. "While the filing of a complaint tolls the statute of limitations, if service is not made upon the defendant within 120-days as required by M.R.C.P. 4(h), the limitations period resumes running at the end of the 120-days." Owens, 891 So.2d at 223(¶ 14). The two-year statute of limitations expired thirteen days after Faust attempted to serve Boozer with process.
¶ 18. A cursory review of the transcript of the hearing on Dr. Egger's motion to dismiss suggests that, in reaching its decision, the circuit court did not consider whether the Spurgeons had good cause for their failure to serve Dr. Egger within 120 days of filing their complaint. To be specific, in announcing its decision, the circuit court stated:
Based on the testimony and the affidavits provided to the Court on the issue of whether or not service of process was effected against or on the defendant ..., the Court finds that it was not, having been served not upon Dr. Egger personally but upon his assistant who has testified, and it's undisputed testimony, [sic] that she did not know what it was she was receiving. She was not told what the documents were. She was not asked about her ability to receive those documents as an agent of Dr. Egger.
There has been no testimony about any practice or common procedure in Dr. Egger's office that would, to a third-party namely, Mr. Faust, the process servercould reasonably be perceived as Ms. Boozer having apparent authority to receive process as would be required under Rule 4(a).
There has also been no evidence that she had, by law, any authority to receive service of process or any legal appointment to do so. The process server simply served someone who had no authority to act on behalf of the doctor, and that process is insufficient, and the motion is granted in that respect.
The circuit court did not once mention whether the Spurgeons had good cause for their failure to serve Dr. Egger within 120 of filing their complaint. However, the circuit court's final judgment of dismissal contains the simple statement that, "Service of the Summons and Complaint in this cause were not made upon Dr. Egger within 120 days after filing of the Complaint and Plaintiffs have not shown good cause why such service was not made within that period." The circuit court's final judgment of dismissal does not elaborate beyond the conclusion that the Spurgeons did not demonstrate good cause.
¶ 19. The Spurgeons claim the circuit court erred when it failed to find good cause. Predictably, Dr. Egger argues that the circuit court was correct. We review a trial court's finding of fact on the existence of good cause for delay in service of process pursuant to our familiar abuse of discretion standard. Perry v. Andy, 858 So.2d 143, 145(¶ 9) (Miss.2003). As such, the circuit court's determination of fact as to whether there was good cause for delay in service of process is a discretionary ruling entitled to deferential review on appeal. Id. After careful consideration, we must conclude that the circuit court abused its discretion when it did not find good cause for the Spurgeons' failure to serve Dr. Egger within 120 days of filing their complaint.
*907 ¶ 20. "To establish good cause the plaintiff must demonstrate at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Powe v. Byrd, 892 So.2d 223, 226(¶ 10) (Miss. 2004). "The excusable neglect standard is a very strict standard." Holmes v. Coast Transit Auth., 815 So.2d 1183, 1186(¶ 16) (Miss.2002).
¶ 21. In Holmes, the Mississippi Supreme Court cited Wright and Miller's Federal Practice and Procedure treatise for the following concept:
good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis.
Holmes, 815 So.2d at 1186(¶ 12) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 342 (3d ed.2000)). "Good cause" can never be demonstrated where plaintiff has not been diligent in attempting to serve process. Montgomery v. SmithKline Beecham Corp., 910 So.2d 541, 545(¶ 13) (Miss.2005). In demonstrating good cause and diligence, a plaintiff must show that he or she has been unable to serve process because the defendant evaded process or engaged in misleading conduct, or for some other acceptable reason. Id.
¶ 22. As we noted above, the Spurgeons had reason to believe that Dr. Egger had actual knowledge of the lawsuit. Dr. Egger's lawyers sent two letters to counsel for the Spurgeons. The record does not indicate just how Dr. Egger's lawyers received notice of the Spurgeons' suit against Dr. Egger. It is not unreasonable to assume that Dr. Egger put his attorneys on notice of the suit. Boozer testified that Dr. Egger knew about the suit because he read the summons and complaint. However, "actual knowledge of a suit does not excuse proper service of process." Mansour v. Charmax Indus., 680 So.2d 852, 855 (Miss.1996). "Complete absence of service of process offends due process and cannot be waived." Id.
¶ 23. The Spurgeons were not aware of a defect in service of process until Dr. Egger filed his motion to dismiss. As noted in Holmes, "good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server." Holmes, 815 So.2d at 1186(¶ 12). Faust executed a return and swore that he personally served Dr. Egger.
¶ 24. The dissent would find that the Spurgeons' counsel exhibited a lack of diligence in failing to "monitor the activity of its process server and to take the steps necessary to ensure timely service is effectuated." We disagree. The dissent cites no authority for its position, and it declines to elaborate as to just how counsel for the Spurgeons failed to monitor Faust or how counsel could have been aware of the defect in Faust's service of process. Faust executed a sworn return of service of process and indicated that he personally served Dr. Egger. Three days after Faust improperly served Boozer, Dr. Egger's attorney contacted counsel for the Spurgeons regarding their claim.
¶ 25. The dissent also finds that the Spurgeons' decision to hire a professional process server over the sheriff gives rise to a greater duty on the part of a plaintiff's counsel. The dissent seems to suggest *908 that, under the same facts, had a sheriff's deputy improperly served Boozer and subsequently executed a sworn return, that lack of personal service of process would not imputed to plaintiff's counsel as a lack of diligence or, as the dissent states, "be characterized as simple inadvertence of counsel." Holmes did not distinguish between a retained professional process server and a sheriff's deputy. Id. Accordingly, there is no support for the dissent's position that the Spurgeons had an enhanced duty to monitor a professional process server as compared to a sheriff's deputy.
¶ 26. Despite the fact that Faust served Boozer near the expiration of the 120-day time limit for service of process, there is no doubt that the Spurgeons attempted to have Dr. Egger served with process within the 120-day time limit. Accordingly, it cannot be said that the Spurgeons did not act diligently. They had reason to believe that Faust successfully served Dr. Egger. Faust completed a return and indicated as much. Further, the communications from Dr. Egger's attorneys suggested that Dr. Egger had notice of the suit. While Dr. Egger's failure to mention improper service of process may not necessarily be considered concealment of that fact, at the same time, it can certainly be considered misleading as Dr. Egger's lawyers obviously seemed to be aware of the Spurgeons' suit. Dr. Egger's attorneys did not reveal the improper service of process in their communications to counsel for the Spurgeons, and we are unaware of any affirmative duty to communicate such a defect. However, the point is relevant to demonstrate the fact that the Spurgeons were not less than diligent in attempting to serve Dr. Egger. Further, Dr. Egger's attorneys indicated that Dr. Egger was involved in a bankruptcy proceeding. The Spurgeons contend that, even if they knew Faust improperly served Dr. Egger, they would not have taken further action due to the automatic stay involved with Dr. Egger's bankruptcy.[2]
¶ 27. Based on the combination of (a) Faust's sworn return indicating personal service of process upon Dr. Egger, (b) no evidence of lack of diligence on the part of the Spurgeons, (c) communications from Dr. Egger's attorneys indicating notice, and (d) Dr. Egger's apparent involvement in bankruptcy proceedings, we find that the circuit court abused its discretion when it failed to find good cause for the Spurgeons failure to serve Dr. Egger within 120 days of the filing of their complaint. As such, we reverse the circuit court and remand this matter for further proceedings consistent with this opinion.
¶ 28. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
CARLTON, J., dissenting:
¶ 29. I disagree with the majority's determination that the circuit court abused its discretion by not finding that the Spurgeons established good cause to excuse their failure to timely effect service of process. Given our standard of review, I *909 cannot say that the circuit court erred in dismissing the Spurgeon's case for failure to serve process. Therefore, I respectfully dissent.
¶ 30. The determination of whether good cause has been shown is within the discretion of the trial court and is "entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." Rains v. Gardner, 731 So.2d 1192, 1196(18) (Miss.1999).
¶ 31. In the instant case, the trial judge issued a bench opinion which set forth her findings of fact on the issue of service of process. In granting Dr. Egger's motion to dismiss, the trial judge stated:
Based on the testimony and the affidavits provided to the Court on the issue of whether or not service of process was effected against or on the defendant Dr. Edwin G. Egger, the Court finds that it was not, having been served not upon Dr. Egger personally but upon his assistant who has testified, and it's undisputed testimony, that she did not know what it was she was receiving. She was not told what the documents were. She was not asked about her ability to receive those documents as an agent of Dr. Egger.
There has been no testimony about any practice or common procedure in Dr. Egger's office that would, to a third-party-namely, Mr. Faust, the process server-could reasonably be perceived as Ms. Boozer having apparent authority to receive process as would be required under Rule 4(a).[[3]]
There has also been no evidence that she had, by law, any authority to receive service of process or any legal appointment to do so. The process server simply served someone who had no authority to act on behalf of the doctor, and that process is insufficient, and the motion is granted in that respect.
¶ 32. In my view, the shortcomings of Faust, the process server, should be imputed to his employers, the Spurgeons. It is well-settled that good cause is not established by "simple inadvertence" or "mistake of counsel." Powe v. Byrd, 892 So.2d 223, 226(10) (Miss.2004). Further, good cause may not be established where the plaintiff has been less than diligent in his efforts to effectuate service of process. Montgomery v. SmithKline Beecham Corp., 910 So.2d 541, 545(13) (Miss.2005). In the instant case, the Spurgeons chose not to have the Circuit Clerk deliver the summons to the sheriff for service, but instead elected to retain their own private process server. I find noteworthy the fact that Faust was not an officer of the court, but rather a hired process server who provided false information about the performance of his duties to his employer, the Spurgeons. Therefore, Faust's misleading conduct should not be imputed to Dr. Egger. I suggest that the responsibility should rest with Spurgeons's counsel to monitor the activity of its process server and to take the steps necessary to ensure timely service is effected. In my opinion, the failure of Spurgeons's counsel in this regard demonstrates a lack of diligence which may be characterized as simple inadvertence of counsel. To this end, I suggest that the misplaced reliance on their *910 own process server does not rise to a level sufficient to establish good cause for the Spurgeons's untimely service of process.
¶ 33. Moreover, the record lacks any evidence directly establishing that the Spurgeons's counsel, prior to the expiration of the 120-day tolling period provided in Rule 4, received either the proof of service or assurances from Faust that Dr. Egger was personally served. The plaintiff bears the burden to show good cause. Montgomery, 910 So.2d at 547(24). Although the proof of service was signed by Faust on August 11, 2004, it was not filed with the trial court until June 15, 2005, as part of the Spurgeons's motion in opposition to Dr. Egger's motion to dismiss. Thus, the Spurgeons' failed to show reliance on the misrepresentations of their process server.
¶ 34. The majority's reliance on Holmes v. Coast Transit Auth., 815 So.2d 1183, 1186(12) (Miss.2002) is misplaced. Holmes did not address whether the conduct of the process server constitutes good cause. Rather, the court in Holmes was called upon to determine whether the conduct of the defendant was misleading or evasive so as to constitute good cause for the plaintiff's failure to timely serve process. 815 So.2d at 1186-87 (9-15). After quoting the learned treatise cited by the majority, the Holmes court held that good-faith negotiations do not constitute good cause for failure to timely effect service of process. Id. Therefore, Holmes does not authoritatively support the majority's finding that the process server's conduct constitutes good cause for the Spurgeons's failure to timely serve Dr. Egger.
¶ 35. In sum, the facts before the trial judge showed less-than-diligent efforts on the part of Spurgeons's counsel as evidenced by his lack of oversight. As less than diligent efforts and/or inadvertence of counsel are insufficient to establish good cause, I find that the misplaced reliance on their private process server does not constitute good cause or neglect sufficient to excuse the Spurgeons's failure to timely serve Dr. Egger. Given our standard of review, I would affirm the trial judge's granting of Dr. Egger's motion to dismiss.
NOTES
[1] Personal service of process upon an individual Mississippi resident may also be accomplished by leaving a copy of the summons and complaint at a defendant's home with the defendant's spouse or some other member of the defendant's family as long as that person is over sixteen years old and is willing to receive service. Afterwards, service of process is not complete until the tenth day after the plaintiff mails a copy of the summons and complaint to the defendant at the same address. M.R.C.P. 4(d)(1)(A). However, Faust did not attempt to serve Dr. Egger pursuant to Rule 4(d)(1)(A). We merely mention this provision for the sake of discussion.
[2] Pursuant to 11 U.S.C. § 362(a)(1), a bankruptcy petition "operates as a stay ... of ... the commencement or continuation, including the issuance or employment of process" of actions against a bankruptcy petitioner.
[3] I find, as does the majority, that the trial judge's finding was correct that Boozer lacked apparent authority to accept service of process for Dr. Egger. See Johnson v. Rao, 952 So.2d 151, (18-20) (Miss.2007) (finding service insufficient due to lack of apparent authority where receptionist lacked actual authority, was not aware of nature of papers delivered, had never before accepted service of process on behalf of her employer, and was not informed by process server that he was there to serve process on her employer).